IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| ILLINOIS CONSERVATIVE UNION; CAROL J. DAVIS; JANET L. SHAW; and LORETTA J. SAVEE,<br><br>                              Plaintiffs,<br><br>v.<br><br>ILLINOIS; THE ILLINOIS STATE BOARD OF ELECTIONS; and STEVE S. SANDVOSS, in his capacity as the Executive Director of the Illinois State Board of Elections.<br><br>                              Defendants. | Civil Action No. _____ |

## **COMPLAINT**

Plaintiffs Illinois Conservative Union, Inc., Carol J. Davis, Janet L. Shaw, and Loretta J. Savee ("Plaintiffs"), by and through counsel, file this Complaint for Declaratory and Injunctive Relief against the Illinois State Board of Elections and Steve S. Sandvoss:

1.      Plaintiffs seeks declaratory and injunctive relief to compel Defendants to comply with their record production obligations under Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507 and for violations of the Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment.

## JURISDICTION AND VENUE

2.　This Court has jurisdiction over this matter, pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States and under 52 U.S.C. § 20510(b)(2), as the action seeks injunctive and declaratory relief under the NVRA.

3.　Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a defendant resides in this district and all defendants reside in Illinois, and because a substantial part of the events and omissions giving rise to the claims herein occurred in this district.

## PARTIES

4.　Plaintiff Illinois Conservative Union, Inc. ("Conservative Union") is a not-for-profit, non-partisan 501(c)(4) organization incorporated under the laws of the Illinois and headquartered at PO Box 88341, Carol Stream, IL 60188-8341.

5.　Plaintiff Carol J. Davis is a resident and a lawfully registered voter in Illinois.  Ms. Davis is the Chairman of the Conservative Union.

6.　Plaintiff Janet L. Shaw is a resident and a lawfully registered voter in Illinois.  Ms. Shaw is Vice-Chair of the Conservative Union and co-chair of the Conservative Union's Illinois Election Integrity Program.

7.　Plaintiff Loretta J. Savee is a resident and a lawfully registered voter in Illinois. Ms. Savee is a co-chair of the Conservative Union's Illinois Election Integrity Program.

8.　Defendant State of Illinois is a "State" subject to the requirements of the NVRA. 52 U.S.C. §§ 20502(4), 20503.

9.　Defendant Illinois State Board of Elections (the "State Board") is an independent state agency created under the laws of the State of Illinois.  It is responsible for supervising the administration of registration and elections laws throughout the State and is the entity charged with

maintaining the centralized voter registration database required by the Help America Vote Act of 2002.  10 ILCS 5/1A-8; 10 ILCS 5/1A-25.  It also has the authority to carry out the rules necessary to implement the voter registration form prescribed by the NVRA.  10 ILCS 5/1A-16(d-5).

10.     Defendant Steve S. Sandvoss is the Executive Director of the Illinois State Board of Elections and the Chief State Election Official of the State of Illinois, responsible for coordinating the State's compliance with the NVRA.  26 Ill. Adm. Code § 216.100(b)-(c); 52 U.S.C. § 20509.  He is sued in his official capacity.

## BACKGROUND FACTS

11.     The NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" by reason of death or a change in residence.  52 U.S.C. § 20507(a)(4).

12.     Section 8(i) of the NVRA grants the public the right to request information concerning this federally required voter list maintenance.  Specifically, it provides that "[e]ach State shall maintain for at least 2 years and shall make available for public inspection" and copying "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."  52 U.S.C. § 20507(i).

13.     Plaintiff Conservative Union's mission is to engage and educate grassroots conservative activists throughout Illinois.  Their goal is to have a positive impact on the financial and moral trajectory of the state of Illinois.  Plaintiff fulfills its mission, among other means, through public records requests.

14.     Over the past several years, Plaintiff Conservative Union and its members have become increasingly concerned about the accuracy and currency of Illinois' voter registration rolls,

including whether state and local officials are complying with the NVRA's voter list maintenance obligations.

15.     Members are concerned that failing to comply with the NVRA's voter list maintenance obligations undermines the integrity of elections by increasing the opportunity for improper voting, out-of-jurisdiction voting, double voting, and fraudulent voting, among other concerns.

16.     In response to this concern, Plaintiff Conservative Union launched an election integrity program to monitor Illinois state and local election officials' compliance with the NVRA. As part of this program, Plaintiff Conservative Union has utilized the public disclosure provision of NVRA Section 8(i) to request and receive records from jurisdictions across Illinois about their voter list maintenance efforts.

17.     On July 24, 2019, Plaintiff Conservative Union sent a request for public records pursuant to Section 8(i) of the NVRA to the Defendant Executive Director of the Illinois State Board of Elections (attached hereto as Exhibit 1).  The letter was signed by Plaintiffs.

18.     Plaintiff Conservative Union requested several kinds of records related to list maintenance, including the most recent voter registration list for Illinois.

19.     The letter expressly stated the records would be used solely for purposes intended by federal law, namely, to ensure the accuracy and currency of the official list of eligible voters and would not be used for any other purpose.

20.      Plaintiff Conservative Union filled out the required procedural paperwork and submitted the appropriate payment to obtain the records.

21.     On August 14, 2019, Defendant State Board's Public Information Officer responded to Plaintiff Conservative Union's request (attached hereto as Exhibit 2).  In that letter,

Defendant State Board denied Plaintiff Conservative Union's request for the official list of eligible voters.  According to Defendant State Board, Illinois law prohibits electronic release of voter data except to "registered political committees and governmental bodies."  Accordingly, "the full voter database would not be available to" Plaintiff Conservative Union.

22.　　Plaintiff Conservative Union is neither a registered political committee nor a governmental body.

23.　　Defendant State Board informed the Conservative Union that any information regarding Illinois' list maintenance efforts would "be made available during our normal business hours" at Defendant State Board's Springfield, Illinois main office.

24.　　On August 28, 2019, three members of Plaintiff Conservative Union, Janet Shaw, Loretta Savee, and Nancy Hayes, traveled to Defendant State Board's Springfield, Illinois main office to inspect and obtain copies of the official list of eligible voters.  They were informed there by Cheryl A. Hobson, Deputy Director of Voter Registration for Defendant State Board, that they were prohibited from receiving copies of the statewide voter registration list under Illinois law. According to Ms. Hobson, Illinois law allowed distribution of the statewide voter registration list only to "political committees" or a "governmental body."

25.　　Plaintiff Conservative Union members were only allowed to review the voter records one at a time on a computer terminal, with very limited query abilities, and no ability to sort, or organize the millions of individual voter records.  It was not possible to assess the effectiveness of Illinois' programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters by viewing voter records one at a time on a computer screen.

26.     On November 18, 2019, Plaintiffs sent a letter to Defendants (attached hereto as Exhibit 3) notifying them, pursuant to 52 U.S.C. 20510(b), that they were in violation of Section 8(i) of the NVRA by failing to produce the requested voter registration list to Plaintiffs. Defendants received the letter on November 27, 2019.

27.     Defendants have not produced the requested electronic voter registration data to the Conservative Union.

28.     Defendants have not otherwise responded to the Conservative Union's November 18, 2019 letter.

## Count I

### (*Violation of Section 8(i) of the NVRA, 52 U.S.C. § 20507(i)*)

29.     Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

30.     Section 8(i) of the NVRA conveys Congress's intention that the public should be able to monitor the state of the voter rolls and the adequacy of election officials' list maintenance programs.

31.     Records covered under Section 8(i) are available to any member of the public.

32.     The statewide voter registration list requested by Plaintiffs are records covered under Section 8(i).

33.     Defendants have failed to produce those records, except in a manner that ensures that they are unusable by Plaintiffs and worthless for any purposes intended by Congress.

34.     There is no legal basis for restricting the distribution of the voter registration list only to a State, political committee, or governmental body.

35.     There is no legal basis for withholding the voter registration list from civic groups like the Conservative Union or from its individual members.

36.    To the extent that Illinois law denies the Conservative Union and its members the ability to obtain documents to which they are entitled under Section 8(i) of the NVRA, Illinois law obstructs the effective implementation of the NVRA, hinders the realization of its enumerated purposes, is contrary to it, and is preempted and superseded by the NVRA.

37.    Plaintiffs are persons aggrieved by a violation of the NVRA.  52 U.S.C. § 20510(b)(1).

38.    The November 18, 2019 Notice Letter provided statutory notice of a violation of the NVRA.

39.    Plaintiffs have suffered and will continue to suffer irreparable injury as a result of Defendants' failure to fulfill their obligations under Section 8(i) of the NVRA.

### Count II

### (*Violation of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983*)

40.    Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

41.    Illinois law (specifically 10 ILCS 5/1A-25) authorizes a "political committee" to obtain access to the State's voter registration list.

42.    Illinois law implicitly forbids politically concerned non-profit organizations, including the Conservative Union, from obtaining meaningful access to the State's voter registration list.

43.    There is no rational basis for allowing local political committees to access the State's voter registration list while denying access to non-profit organizations like the Conservative Union.

44.    Illinois law violates Plaintiffs' rights guaranteed under the Equal Protection Clause of the Fourteenth Amendment.

45.     Defendants have acted and, unless enjoined, will act under color of state law to deprive Plaintiffs of their rights under the Fourteenth Amendment.

46.     Plaintiffs will suffer serious and irreparable harm to their constitutional and statutory rights unless Defendants are enjoined from denying Plaintiffs access to Illinois' voter registration list.

47.     Plaintiffs have no adequate remedy at law.

## Prayer for Relief

WHEREFORE, Plaintiffs pray for entry of a judgment:

a.     Declaring Defendants to be in violation of Section 8(i) of the NVRA;

b.     Declaring that Section 8(i) of the NVRA preempts and supersedes any requirement in 10 ILCS 5/1A-25 or any other Illinois statute, regulation, practice or policy that bars Plaintiffs from obtaining the requested voter registration list;

c.     Declaring that 10 ILCS 5/1A-25 violates Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment;

d.     Ordering Defendants to produce Illinois' voter registration list to Defendants in a usable, electronic form;

e.     Permanently enjoining Defendants from refusing to allow Plaintiffs to obtain Illinois' voter registration list in the future;

f.     Ordering Defendants to pay Plaintiffs' reasonable attorneys' fees, including litigation expenses and costs, pursuant to 52 U.S.C. § 20510(c) and 42 U.S.C. § 1988; and

g.     Awarding Plaintiffs such other and further relief as this Court deems just and proper.

September 18, 2020

David J. Shestokas (IL Bar No. 6196699)
16819 Spicebush Lane
Orland Park, Illinois 60467
Phone: 312-451-5550
constitution@shestokas.com

Paul J. Orfanedes (IL Bar No. 6205255)
Robert D. Popper*
Eric W. Lee*
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, DC 20024
Phone: (202) 646-5172
porfanedes@judicialwatch.org
rpopper@judicialwatch.org
elee@judicialwatch.org

H. Christopher Coates*
LAW OFFICES OF H. CHRISTOPHER COATES
934 Compass Point
Charleston, South Carolina 29412
Phone: (843) 609-7080
curriecoates@gmail.com

T. Russell Nobile*
JUDICIAL WATCH, INC.
Post Office Box 6592
Gulfport, Mississippi 39506
Phone: (202) 527-9866
rnobile@judicialwatch.org

*  Application for admission pro hac vice
forthcoming