IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ILLINOIS CONSERVATIVE UNION; CAROL J. DAVIS; JANET L. SHAW; and LORETTA J. SAVEE, | ) ) ) ) | |
| Plaintiffs, | ) ) | 20 cv 5542 |
| v. | ) ) | District Judge Sara L. Ellis |
| ILLINOIS; THE ILLINOIS STATE BOARD OF ELECTIONS; and STEVE S. SANDVOSS, in his capacity as the Executive Director of the Illinois State Board of Elections, | ) ) ) ) ) ) | Magistrate Judge Beth W. Jantz |
| Defendants. | ) ) ) | |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO RULES 12(B)(6) AND 12(B)(1)**

Defendants State of Illinois, Illinois State Board of Elections, and Director Steve Sandvoss (hereinafter, "Defendants"), by their attorney, Kwame Raoul, Attorney General of the State of Illinois, respectfully request that this Honorable Court dismiss Plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted and 12(b)(1) for lacking subject matter jurisdiction. In support thereof, Defendants states as follows:

**INTRODUCTION**

Plaintiffs claim that the National Voter Registration Act entitles them to a massive amount of sensitive data about the voters of Illinois, but their claims fail for several reasons. First, the plain language of the National Voter Registration Act does not require that registered voter list data, including the voter's full name, birthdate, home address, 2008-2018 voting history, and status, be made available to the public in a data file. Plaintiffs have therefore failed

1

to identify how the Act was violated in this instance. And even if the Act could somehow be read to mandate public access to registered voter lists, Plaintiffs' allegations detail how Plaintiffs were indeed provided access to Illinois' voter registration lists—just not in the specific format Plaintiffs requested. Subsequently, Plaintiffs have failed to state an injury-in-fact and therefore lack requisite standing to file this action.

Moreover, limiting access to sensitive, identifying information is rationally related to a legitimate governmental interest in protecting registered voter information, and therefore, Plaintiffs' equal protection claim under the Fourteenth Amendment fails. Finally, Plaintiffs' claims against the State of Illinois and State Board of Elections are barred by the Eleventh Amendment and must be dismissed. For these reasons, Plaintiffs' complaint should be dismissed pursuant to F.R. Civ. P. 12(b)(1) and 12(b)(6).

### STATEMENT OF FACTS

Over a year ago, on July 24, 2019, Plaintiffs mailed an extensive request for records to the Illinois State Board of Elections (hereinafter, "the Board"). (Plaintiffs' Complaint, ECF No. 1, at ¶ 17; Plaintiffs' Request, ECF No. 1-3, at 4). The request sought "all pertinent records . . . concerning the 'implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency' of Illinois' official lists of eligible voters during the past 2 years," "copies of the most recent voter registration lists … including a unique voter / state ID, each voter's name, full date of birth, home address, and most recent voter activity," "the names and addresses of all persons to whom notices described in 52 USC § 20501(d)(2) were sent and information concerning whether or not each person responded to the notice," "any and all records regarding voters removed by reason of: death, procedures required following notices sent pursuant to 52 USC § 20501(d)(2), non-citizenship, felony conviction, mental incapacity," and

"all manuals, training materials, protocols, written standards and official guidance concerning efforts to ensure the accuracy of your official list of eligible voters." (ECF No. 1-3, at 5, 4).

On August, 14, 2019, a Board public information officer responded to Plaintiffs and explained that generally "any relevant information regarding Illinois list maintenance efforts in the possession of the SBE would be made available during normal business hours at the main office" and enclosed hard copies of "a file listing all registrations made inactive dating back to January 1, 2017 (these are the voters to whom notices were sent in 52 USC § 20501(d)(2)) and the voters' current status," "records of voter list maintenance activity summaries from all Illinois jurisdictions for this year," which the letter also pointed out were immediately accessible on the Board's website. (*Id*. at 6-7). Regarding "manuals (etc.) concerning maintaining the accuracy of voter lists," the public information officer provided "a redacted version of the IVRS Manual and NVRA Manual." (*Id*.). The public information officer also explained that "Illinois law restricts the release of electronic voter data to registered political committees and governmental bodies, so the full voter database would not be available" to Plaintiffs' non-profit organization. (*Id*. at 6). And further, "the information made available to political committees and governmental bodies provides each voter's age, but not a full date of birth" as was requested by Plaintiffs. (*Id*.).

On November 18, 2019, Plaintiffs mailed another letter to the Board. (*Id*. at 1-3). In that letter, Plaintiffs allege that on August 28, 2019, members of Plaintiffs' organization went to Springfield, Illinois to personally view the available voter list data online. (*Id.* at 2). Plaintiffs accessed the data and searched "based on name, address, or birth-date," but claim that they could not review voting history or "query the data." (*Id*.). Plaintiffs insisted that they "require registered voter list data (full name, birth-date, home address, 2008-2018 voting history, status (active, inactive, canceled)) in a data file for analysis to determine the proper maintenance of

voter rolls" and that if they did not receive this information within 90 days, that they would file a lawsuit. (*Id*. at 2, 1). Ten months later, after not receiving the requested information in a data file, Plaintiffs filed this action. (*See* ECF No. 1).

Plaintiffs are board members of a conservative non-profit organization. (*Id.* at 2). They allege a violation of Section 8 of the National Voter Registration Act claim and a Fourteenth Amendment equal protection claim against the State of Illinois, the Illinois State Board of Elections, and Director Sandvoss in his official capacity.  (*Id*. at 6-8).

## STANDARD OF REVIEW

To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a complaint must contain sufficient facts that when assumed true, "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Offering nothing more than "labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft*, 556 U.S. at 678.

Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss a case based on "lack of subject matter jurisdiction." F.R.C.P. 12(b)(1). When a plaintiff lacks requisite standing to bring an action, federal jurisdiction cannot attach and the court lacks subject matter jurisdiction. *Walters v. Edgar*, 163 F.3d 430, 432 (7th Cir. 1998). Pursuant to Rule 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." F.R.C.P. 12(h)(3).

## ARGUMENT

**I.      Plaintiffs fail to state a claim that the National Voter Registration Act was violated or that it preempts Illinois law.**

Plaintiffs allege that the National Voter Registration Act (hereinafter, the "NVRA") entitles them to a plethora of information about every registered voter in Illinois. But nowhere does 52 U.S.C. § 20507(i) state that the public shall be provided unfettered access to all of the information contained in voter registration lists and that hard copies of this information must be provided when requested by the public. Instead, the federal statute addresses the "public disclosure of voter registration activities" and states that:

> (1) Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

52 U.S.C. § 20507(i)(1) (2020). The statute goes on to specify that "[t]he records maintained pursuant to paragraph (1) shall include lists of the names and addresses of all persons to whom notices described in subsection (d)(2) are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made." 52 U.S.C. § 20507(i)(2) (2020). 52 U.S.C. § 20507(d)(2) details what is contained in the notices that are sent to registered voters in instances where that voter may be removed from the list of eligible voters and explains what that voter needs to do in order to maintain eligibility.

Section 1A-25 of the Illinois Election Code (10 Ill. Comp. Stat. 5/1A-25) does not run against the above federal statute. Instead, Section 1A-25 works in tandem with the NVRA by explicitly declaring the State's interest in protecting the "privacy and confidentiality of voter registration information." 10 ILCS 5/1A-25 (2020). Section 1A-25 states that the information contained in the centralized statewide voter registration list cannot be disclosed to "any person or

entity other than to a State or local political committee and other than to a governmental entity

for a governmental purpose" except under the following restrictions:

> (1) subject to security measures adopted by the State Board of Elections which, at
> a minimum, shall include the keeping of a catalog or database, available for
> public view, including the name, address, and telephone number of the person
> viewing the list as well as the time of that viewing, any person may view the list
> on a computer screen at the Springfield office of the State Board of Elections,
> during normal business hours other than during the 27 days before an election, but
> the person viewing the list under this exception may not print, duplicate, transmit,
> or alter the list; or (2) as may be required by an agreement the State Board of
> Elections has entered into with a multi-state voter registration list maintenance
> system.

*Id*.

Plaintiffs argue that § 20507(i) of the NVRA generally preempts 10 ILCS 5/1A-25. (ECF

No. 1, at ¶ 36). While it is unclear what type of preemption Plaintiffs believe has occurred here,

> "[A]ll of them, [conflict, express, and field] work in the same way: Congress
> enacts a law that imposes restrictions or confers rights on private actors; a state
> law confers rights or imposes restrictions that conflict with the federal law; and
> therefore the federal law takes precedence and the state law is preempted."

*Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1480 (2018). When analyzing a

preemption claim, the first step in determining statutory intent is to "'begin with the language

employed by Congress and the assumption that the ordinary meaning of that language accurately

expresses the legislative purpose." *Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 383

(1992) (citing *FMC Corp. v. Holliday,* 498 U.S. 52, 57 (1990)). A plain reading of the federal

statute here shows that there is no conflict, as the statute only dictates that states provide public

access to "all records concerning the *implementation of programs and activities*" that the state is

utilizing to maintain current, accurate eligible voter lists. 52 U.S.C. § 20507(i)(1) (emphasis

added). In other words, the public is entitled to view *how* the state is maintaining eligible voter

lists, and Congress specifically stated that the public must also be provided access to the notices

that are sent to voters informing them that their eligibility to vote is potentially at risk, as well as any voter responses to those notices. 52 U.S.C. § 20507(i)(2). But Congress did not specify that, along with these notices and responses, the public must also be provided hard copies of *all* the information contained in voter registration lists, or that the voter lists themselves are considered to be part of the records showing how the state is maintaining the accuracy of voter lists.

Second, even if the implementation of maintenance programs could be construed to include voter lists, Section 1A-25 is still not preempted because it already provides the public access to the centralized statewide voter registration list. 10 ILCS 5/1A-25. Plaintiffs might prefer to be mailed a data file of the entire list, but even hard copies of the documents that Congress specifically identifies in the NVRA are not guaranteed. Instead, photocopying those documents at a reasonable cost are to be an option, *where available*. 52 U.S.C. § 20507(i)(1) (emphasis added). Nor does the NVRA support Plaintiffs' implication that each voter's eleven-year voting history must be made available to the public, and if at all, the statute explicitly mandates that only two-years' worth of the records must be made available. *Id*. Section 1A-25 outlines safeguards that preserve the privacy and confidentiality of sensitive voter information. The State's efforts to protect its citizens' privacy in this way can only be preempted by an explicit act of Congress. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (citing *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485 (1996)) ("'[i]n all pre-emption cases … we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'"). Plaintiffs' assertion that Section 1A-25 is preempted by the NVRA misses the mark.

In their November 18, 2019 letter, Plaintiffs refer to two unpublished cases to support their broad assertion that they may not be denied electronic voter registration data, but both cases

are distinguishable. First, Plaintiffs cited to *Judicial Watch, Inc. v. Lamone*, No. ELH-17-2006, 2018 WL 2564720 (D. Md. June 4, 2018). (ECF No. 1-3, p. 2). Plaintiffs claimed that the holding of this case states that "a bona fide civic organization may not be denied electronic voter registration data." (*Id*.). In *Judicial Watch*, the plaintiffs submitted an application to Maryland's Board of Elections to receive copies of the Montgomery County voter registration database; the request was ultimately denied because it had not been made by a registered Maryland voter. *Judicial Watch, Inc.*, 2018 WL 2564720, at *3, *14. When considering the state's motion to dismiss, the Maryland district court found that, given the vague nature of the original request to the Board of Elections, "it is plausible that the requested voter registration database contains records concerning the implementation of programs and activities conducted for the purpose of maintaining accurate and current voter registration lists." *Id*. at 14. But, as the scope of the requested "'database' had not been clearly defined" by the plaintiffs, the court invited the state to seek a protective order for, or move for the in-camera review of, any materials beyond the scope of the National Voter Registration Act. *Id*.

The *Judicial Watch* case is distinguishable from this case in two ways. First, Plaintiffs' request for "registered voter list data (full name, birth-date, home address, 2008-2018 voting history, status (active, inactive, canceled)) in a data file" is neither vague nor ambiguous. It can be readily determined at this stage that the requested voter lists themselves do not contain records concerning the implementation of programs and activities conducted for the purpose of maintaining accurate and current voter registration lists under the NVRA. Second, even if it could be argued that the voter lists somehow fall under the records referenced in the NVRA, the plaintiffs in *Judicial Watch* submitted an application to access the voter database and were

denied outright. Here, Plaintiffs were not mailed hard copies of the voter lists as requested, but were allowed access to, and continue to have access to, the voter lists.

Plaintiffs also referenced *Bellitto v. Snipes*, No. 16-cv-61474 (S.D. Fla. Mar. 30, 2018) (attached as Exhibit A) for the proposition that "election officials must provide full public access to all records related to their list maintenance activities *including their voter rolls*." (ECF No. 1-3 at 3). Once more Plaintiffs' characterization of this opinion, which entered judgment in the *defendants'* favor, is misleading. As the opinion states, "the [c]ourt's focus, and its resulting analysis in this Opinion, center on whether . . . the [Supervisor of Elections] for Broward County conducted a general program that makes a reasonable effort to remove ineligible voters by reason of death or change of address as required by Section 8 of the NVRA." (Ex. A, at 5). In determining whether Broward County made a reasonable effort to remove ineligible voters, the district court quickly outlined the NVRA and in doing so, cited to 52 U.S.C. § 20507(i) for the proposition that "election officials must provide full public access to all records related to their list maintenance activities, including their voter rolls." *Id*. at 8. This may have just been an error or perhaps the court was referring to the "lists of the names and addresses of all persons to whom notices described in subsection (d)(2) were sent" mentioned in 52 U.S.C. § 20507(i)(2) that the public is entitled to view. Either way, a plain reading of the statute does not include the term "voter rolls" and so the court's assertion is not actually supported by the statute on its face. *See* 52 U.S.C. § 20507(i). And given that the ultimate question in *Bellitto* was whether a reasonable effort was made to maintain accurate voter registrations in Broward County and not an analysis of which election-related information the public is entitled to receive under the NVRA in Illinois, this statement is, at most, ambiguous dicta. *See Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998) (explaining that dicta are "not . . . integral elements of the analysis underlying the

decision" and are "not grounded in concrete legal dispute and anchored by the particular facts of

that dispute," so "they may not express the judges' most careful, focused thinking."). 52 U.S.C. §

20507(i) does not require that the public shall be provided copies of all of the information

contained in voter registration lists, and therefore, Section 1A-25 is not preempted. Plaintiffs'

claim under the NVRA must be dismissed.

**II.     Plaintiffs were provided access to voter registration lists, and therefore, lack
          standing to bring this action.**

It is well established that "Article III restricts the judicial power to actual 'Cases' and

'Controversies,' a limitation understood to confine the federal judiciary to 'the traditional role of

[the] courts, which is to redress or prevent actual or imminently threatened injury. . . .'" *Ezell v.

City of Chi.*, 641 F.3d 684, 694-95 (7th Cir. 2011) (citing *Summers v. Earth Island Inst.,* 555

U.S. 488, 491 (2009)). Accordingly, to satisfy the standing requirements for injunctive relief, the

plaintiffs must show that they are "under an actual or imminent threat of suffering a concrete and

particularized 'injury in fact'"; that this injury is fairly traceable to the defendant's conduct; and

that it is likely that a favorable judicial decision will prevent or redress the injury." *Common

Cause Ind. v. Lawson*, 937 F.3d 944, 947 (7th Cir. 2019) (citing *Summers v. Earth Island Inst.,*

555 U.S. 488, 493 (2009)). The alleged threatened injury-in-fact must be "actual and imminent,

not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citing

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180–181 (2000)).

Moreover, a "generalized grievance against allegedly illegal government conduct" is insufficient

for standing; only individuals who claim that they are "personally denied equal treatment" may

challenge an "allegedly unconstitutional governmental action." *O'Sullivan v. City of Chicago*,

396 F.3d 843, 855 (7th Cir. 2005) (quoting *United States v. Hays*, 515 U.S. 737, 743-44 (1995)).

When multiple types of relief are sought, this threshold "does not fragment the standing inquiry

into a series of discrete questions about the plaintiff's stake in each of the particular types of relief sought." C*ity of Los Angeles v. Lyons*, 461 U.S. 95, 128 (1983). Instead, it asks "simply whether the plaintiff has a sufficient stake in seeking a judicial resolution of the controversy." *Id*.

Plaintiffs assert boilerplate allegations that they "are persons aggrieved" and "have suffered and will continue to suffer irreparable injury" (ECF No. 1 at ¶ 37, 39), but they have failed to allege how the facts of this case resulted in real damage and actual harm. Instead, the complaint details that the State Board of Elections provided Plaintiffs with the information that they requested, including access to the voter registration lists. (*See* ECF No. 1). Plaintiffs' only true complaint in this matter is that the voter registration lists were not made into a data file for Plaintiffs' sole use and that Plaintiffs were unable to view each voter's eleven-year voting history, as was requested in their letter to the Board. Plaintiffs claim that Illinois' voter list maintenance programs cannot be assessed by viewing records one at a time on a computer screen, but Plaintiffs fail to explain how viewing a personal copy of Illinois' voter lists at their home or office computer would be any different. Similarly, Plaintiffs fail to explain how they were harmed by not being able to view whether each voter has voted in past elections. Plaintiffs fail to explain how every voter's "2008-2018 voting history" will be used in "monitor[ing] the state of voter rolls and the adequacy of election officials' list maintenance programs" or how Plaintiffs were actually injured by the alleged inability to review this history. (ECF No. 1-3, at p. 2, ECF No. 1, ¶ 30). Plaintiffs state that they are generally "concerned about the accuracy and currency of Illinois' voter registration rolls," but do not explain the basis for this concern, provide insight into why they believe Illinois' voter rolls are inaccurate, outline how the "opportunity for improper voting, out-of-jurisdiction voting, double voting, [] fraudulent voting, among other concerns" is increasing, or detail how Plaintiffs seek to remedy the suspected

deficits and why they were unable to do so with the information that was already provided to them. (ECF No. 1, ¶¶ 14, 15). Plaintiffs' speculative claims of harm are insufficient to establish an injury for purposes of standing. *Plotkin v. Ryan*, 239 F.3d 882, 885 (7th Cir. 2001) (claims that a "deep-seated culture or policy or custom" of coercion existed within a state agency and would continue without remedial action were found to be "purely speculative" and that "Plaintiffs bear the burden of establishing standing and each element, . . . must be supported by more than unadorned speculation.")). Plaintiffs fail to point to a concrete injury; alleging a statutory violation, even one that the court has found to have occurred, is insufficient to cure this threshold deficiency. *See Meyers v. Nicolet Rest. of De Pere, L.L.C.,* 843 F.3d 724, 728 (7th Cir. 2016); *Casillas v. Madison Ave, Assocs.*, 926 F.3d 329, 331-332 (7th Cir. 2019) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)). Plaintiffs do not have standing to assert this action and it must be dismissed.

III.    **Plaintiffs' Fourteenth Amendment equal protection claim fails because Section 1A-25 is rationally related to a legitimate state interest.**

Plaintiffs claim that Section 1A-25 violates their equal protection rights because the law allows political committees, but not non-profit organizations, to access the State's voter registration lists. (ECF No. 1, at ¶¶ 41-43). Plaintiffs do not allege that they are members of a suspect class or that their fundamental rights were violated, but instead claim that the Illinois statute generally violates their rights. (*Id*. at ¶¶ 44-45).

When a statute does not implicate fundamental rights or a suspect class, courts look to whether the statute is "rationally related to legitimate government interests." *St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.*, 919 F.3d 1003, 1008 (7th Cir. 2019). Plaintiffs admit that the rational basis test applies here, alleging that "there is no rational basis for allowing local political committees to access the State's voter registration lists, while denying access to

non-profit organizations." (ECF No. 1, at ¶ 43). "This standard of review is a paradigm of judicial restraint" because judicial inquiry ends as soon as a plausible reason for the action is found. *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313-14 (1993) (internal citations omitted); *St. Joan Antida High Sch. Inc.*, 919 F.3d at 1011 ("We need only identify a legitimate end and ask whether the means – the classification – bears a rational relationship to the end."). Here, the statute itself explains that maintaining a log of viewers and limiting the dissemination of individual copies of the information protects the "privacy and confidentiality of voter registration information." 10 ILCS 5/1A-25 (2020). This explanation is sufficient to end the inquiry. Voter registration lists might include drivers' license numbers, social security numbers, dates of birth, and residential addresses, which is all one needs to successfully steal identities, locate victims of domestic violence, harass or stalk individuals, or advertise for unsolicited purposes.[1] Providing redacted versions of these lists to political committees and governmental entities for a governmental purpose, while allowing private individuals to view the information from a supervised location and requiring that they sign a log before doing so, enables the State to curtail the dissemination of that information and monitor those who view it. Once copies of this information are provided to private individuals, the State loses control and can no longer protect its residents.

Plaintiffs' preferences aside, rational review dictates that courts "are required to accept a legislature's generalizations even when there is an imperfect fit between means and ends" as "[a] classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality." *Srail v. Vill. of Lisle, Ill.*, 588 F.3d 940, 946-47 (7th Cir. 2009) (quoting *City of Chicago v. Shalala*, 189 F.3d 598, 606 (7th Cir. 1999)). This

---

[1] Charles J. Pults, *American's Data Crisis: How Public Voter Registration Data Has Exposed the American Public to Previously Unforeseen Dangers and How to Fix It*, 105 IOWA L. REV. 1363 (2020).

standard gives a "strong presumption of validity" to the Board's decisions and Plaintiffs can only overcome this presumption by negating "every conceivable basis" for the decision. *Minerva Dairy, Inc. v. Harsdorf*, 905 F.3d 1047, 1053 (7th Cir. 2018) (internal citations omitted). Plaintiffs have not and cannot overcome this burden. Section 1A-25 easily passes rational basis review, and Plaintiffs' equal protection claim must be dismissed accordingly.

## IV. Plaintiffs' claims against the State of Illinois and its State Board of Elections are barred by the Eleventh Amendment.

Claims against states and state agencies are barred by sovereign immunity under the Eleventh Amendment, regardless of the relief sought. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Kroll v. Bd. of Trustees of Univ. of. Ill.*, 934 F.2d 904, 907 (7th Cir. 1991). Two exceptions to immunity exist, but neither applies here. First, a state may "by clear and unequivocal language" waive its immunity and consent to suit in federal court (*Kroll*, 934 F.2d at 907), but Illinois has not done here. Second, Congress may "by clear and unequivocal language" abrogate the state's immunity pursuant to the Fourteenth Amendment (*id.*), but that is not the case here either.

Moreover, Plaintiffs' equal protection claim under § 1983 can only be brought against an actual person. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) (holding that a state department is not a "person" suable under § 1983). As neither of the above exceptions to the Eleventh Amendment apply to this case and neither the State of Illinois, nor the Illinois State Board of Elections, are persons suable under § 1983, Plaintiffs' claims against the State of Illinois and the State Board of Elections are barred by the Eleventh Amendment and must be dismissed.

CONCLUSION

WHEREFORE, Defendants respectfully request that this Honorable Court grant their

Motion to Dismiss Plaintiffs' Complaint under Rules 12(b)(6) and 12(b)(1), with prejudice.

Respectfully,

KWAME RAOUL
Illinois Attorney General

By:    */s/ Kelly C. Bauer*
        KELLY C. BAUER
        ASSISTANT ATTORNEY GENERAL
        Office of the Illinois Attorney General
        General Law Bureau – Civil Rights Unit
        100 W. Randolph St., 13th Floor
        Chicago, IL 60601
        (312) 814-3119
        (312) 814-1154 (FAX)
        Kbauer@atg.state.il.us

### CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2020, I submitted with the Clerk for the Northern District of Illinois using the Court's electronic filing system or CM/ECF **DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO RULES 12(B)(6) AND 12(B)(1)** and thereby provided a copy of to all parties of record.

By:    */s/ Kelly C. Bauer*
              KELLY C. BAUER
              ASSISTANT ATTORNEY GENERAL