IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ILLINOIS CONSERVATIVE UNION, *et al.*

                              Plaintiffs,

v.

ILLINOIS, *et al.*,

                              Defendants.

Civil Action No. 1:20-cv-5542

District Judge Sara L. Ellis

Magistrate Judge Beth W. Jantz

**PLAINTIFFS' MEMORANDUM OF LAW IN
<u>OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page No.**

INTRODUCTION ................................................................................................1

BACKGROUND ............................................................................................... 2

    Statutory Background. ................................................................................ 2

    Plaintiffs' Allegations. ............................................................................... 3

    Defendants' Motion to Dismiss. ................................................................ 4

STANDARD OF REVIEW ............................................................................... 5

ARGUMENT .................................................................................................... 7

    I.      The Complaint Plausibly Alleges That Illinois' Statewide
           Voter Registration List Is a Record Covered by Section 8(i) of
           the NVRA, and That Illinois' Restrictions Conflict With and
           Are Preempted by It. ................................................................................6

           A.     The Voter Registration List Is a "Record" Under
                    Section 8(i). ..................................................................... 6

           B.     The Restrictions Contained in Illinois Law Conflict
                    With the Requirements of Section 8(i) of the NVRA. ............................ 9

           C.     Section 8(i) Supersedes Conflicting Provisions of Illinois
                    Law as a Matter of "Obstacle" and "Field" Preemption........................ 11

    II.     Plaintiffs Have Standing. ...................................................................... 13

    III.   Plaintiffs Have Stated a Claim Under the Fourteenth
         Amendment........................................................................................... 14

    IV.   Defendants State of Illinois and State Board of Elections
         Cannot Claim Sovereign Immunity Respecting Claims
         Under the NVRA. ................................................................................. 16

CONCLUSION.................................................................................................. 17

i

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page No.**

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) ................................................. 12

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n.*,
    576 U.S. 787 (2015)....................................................................................... 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. 5

*Baumgardner v. Cnty. of Cook*,
    108 F. Supp. 2d 1041 (N.D. Ill. 2000) ............................................................... 15

*Bell v. Hood*, 327 U.S. 678 (1946)........................................................................... 6, 14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................ 5

*Bellitto v. Snipes*, No. 16-cv-61474-BLOOM/Valle,
    2018 U.S. Dist. LEXIS 103617 (S.D. Fla. Mar. 30, 2018)................................. 8

*Bloomberg L.P. v. United States FDA*,
    500 F. Supp. 2d 371 (S.D.N.Y. 2007)............................................................... 8

*Common Cause Ind. v. Lawson*, 937 F.3d 944 (7th Cir. 2019) .................................... 12

*Ex Parte Young*, 209 U.S. 123, 159 (1908) ............................................................ 16

*FEC v. Akins*, 524 U.S. 11, 21 (1998).................................................................... 13, 14

*Fish v. Schwab*, 957 F.3d 1105 (10th Cir. 2020) ...................................................... 12

*Fortres Grand Corp. v. Warner Bros. Entm't Inc.*,
    763 F.3d 696 (7th Cir. 2014) .......................................................................... 6

*Foster v. Love*, 522 U.S. 67 (1997)....................................................................... 11

*Gade v. Nat'l Solid Wastes Management Ass'n*, 505 U.S. 88 (1992).......................... 13

*Harkless v. Brunner*, 545 F.3d 445 (6th Cir. 2008) ........................................ 11, 12, 17

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ............................................. 14

*In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.*,
    155 F. Supp. 3d 772 (N.D. Ill. 2016) ................................................................ 6

*Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425 (D. Md. 2019) .................. *passim*

*Judicial Watch, Inc. v. Lamone*, 455 F. Supp. 3d 209 (D. Md. 2020) ......................... 11

*Krieger v. Virginia*, 599 F. App'x 112 (4th Cir. 2015).............................................. 17

*Libertarian Party of Ind. v. Marion Cnty. Bd. of Voter Reg.*,
    778 F. Supp. 1458 (S.D. Ind. 1991) ...............................................................15

*Long v. Shorebank Dev. Corp.*, 182 F.3d 548 (7th Cir. 1999)........................................ 6

*Malak v. Associated Physicians, Inc.*, 784 F.2d 277 (7th Cir. 1986)........................ 6, 14

*Motel Aetnastak, Inc. v. Miessen*, 998 F. Supp. 2d 694 (N.D. Ill. 2014) ....................... 6

*Motorola Solutions v. Hytera Communs. Corp.*, No. 1:17-cv-1973,
    2020 U.S. Dist. LEXIS 35942 (N.D. Ill. Jan. 31, 2020) ......................... 10

*Mungiovi v. Chicago Hous. Auth.*, 901 F. Supp. 261 (N.D. Ill. 1995) ........................... 6

*Project Vote/Voting for Am., Inc. v. Long*,
    752 F. Supp. 2d 697 (E.D. Va. 2010) ............................................... 14

*Project Vote/Voting for Am., Inc. v. Long*,
    682 F.3d 331 (4th Cir. 2012) ...................................................... 7, 8, 9

*Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320 (N.D. Ga. 2016)........................ 9, 10

*Public Citizen v. Dep't of Justice*, 491 U.S. 440 (1989)................................. 14

*Pub. Int. Legal Found., Inc. v. Bell*, No. 5:19-CV-248-BO,
    2019 U.S. Dist. LEXIS 179485 (E.D.N.C. Oct. 16, 2019) ...................... 17

*Seminole Tribe v. Fla.*, 517 U.S. 44 (1996) ........................................... 17

*Sioux City Bridge Co. v. Dakota Cnty.*, 260 U.S. 441 (1923)........................... 15

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ...................................... 14

*True the Vote v. Hosemann*, 43 F. Supp. 3d 693 (S.D. Miss. 2014)...................... 7

*U.S. Term Limits v. Thornton*, 514 U.S. 779 (1995)................................... 17

*United States v. Wilson*, 159 F.3d 280 (7th Cir. 1998) ................................ 8

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) ................................ 15

*Wroblewski v. City of Washburn*, 965 F.2d 452 (7th Cir. 1992).......................... 15

**U.S. Constitution**

U.S. Const. amend. XIV, § 1................................................................. 15

**Federal Statutes**

52 U.S.C. § 20501(b) ....................................................................... 2

52 U.S.C. § 20503(a) ....................................................................... 17

52 U.S.C. § 20504...................................................................................................2

52 U.S.C. § 20505(a)(1) ...................................................................................... 17

52 U.S.C. § 20506 ........................................................................................... 2, 17

52 U.S.C. § 20507(a) ....................................................................................... 2, 17

52 U.S.C. § 20507(i) ..................................................................................... *passim*

52 U.S.C. § 20509 ................................................................................................ 3

52 U.S.C. § 20510 ........................................................................................... 3, 17

**Federal Rules**

Fed. R. Civ. P. 12(b)(1)..................................................................................... 3, 6, 17

Fed. R. Civ. P. 12(b)(6)....................................................................................... 5, 15

**State Statutes**

26 Ill. Adm. Code § 216.100(b) ............................................................................ 3

26 Ill. Adm. Code § 216.100(c) ............................................................................ 3

10 Ill. Comp. Stat. 5/1A-25.................................................................... 3, 10, 13, 16

**Federal Congressional Reports**

S. REP. NO. 103-6 (1993) ................................................................................... 17

H.R. REP. NO. 103-9 (1993)................................................................................. 9

**Other Authorities**

MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2008).................................. 8

DEBATES IN THE SEVERAL STATE CONVENTIONS ON THE ADOPTION OF THE FEDERAL CONSTITUTION 68 (Jonathan Elliot ed., 1836)................................................ 12

Plaintiffs ILLINOIS CONSERVATIVE UNION, CAROL J. DAVIS, JANET L. SHAW, and LORETTA J. SAVEE (collectively, "Plaintiffs") submit this memorandum of law in support of their opposition to the Motion to Dismiss filed by Defendants STATE OF ILLINOIS, ILLINOIS STATE BOARD OF ELECTIONS, and Executive Director STEVE SANDVOSS (hereinafter, "Defendants").

## INTRODUCTION

Plaintiffs are a not-for-profit organization and three executive members concerned about the accuracy of Illinois' voter registration list. To this end, Plaintiffs sent a public records request under the public disclosure provision of the National Voter Registration Act of 1993 (NVRA) to help them determine whether Defendants were complying with their obligations under the NVRA. Plaintiffs included a request for Illinois' voter registration list.

Rather than providing this list to Plaintiffs in any usable format, Defendants limited them to in-person viewing, on a single computer screen, one record at a time, in a government office 200 miles away in Springfield, Illinois, during business hours. Plaintiffs could not copy or query the millions of individual records in the statewide registration list. These restrictions contrast with the treatment afforded political committees, which can obtain the voter registration list on request, in a usable, electronic format. Plaintiffs travelled to Springfield and went through with their review under all the specified restrictions—and confirmed that it was a pointless exercise.

At its core, the complaint simply alleges that Defendants imposed restrictions on Plaintiffs that made their federal right to review the registration list meaningless, and that this violated both the NVRA and the Equal Protection Clause of the Fourteenth Amendment. As set forth below, Plaintiffs complaint clearly alleges jurisdiction and valid causes of action. Defendants' motion to dismiss should be denied.

# BACKGROUND

***Statutory Background.***

The NVRA was enacted for two stated purposes: to "increase the number of eligible citizens who register to vote" and "enhance[]" their "participation . . . as voters in elections for Federal office"; and "to protect the integrity of the electoral process" and "ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b). It seeks to increase voter participation in several ways, mandating, for example, that offices providing public assistance accept voter registration applications, and that applications for driver's licenses serve as voter registration applications (giving the law its popular name, "Motor Voter"). *Id.* §§ 20504, 20506. The second goal, ensuring election integrity and accurate and current voter rolls, is embodied in Section 8, which requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters" who have died or moved elsewhere. *Id.* § 20507(a)(4).

Section 8(i), which is the subject of this lawsuit, mandates public disclosure of records relating to a state's efforts to properly maintain its voter rolls. It provides that each state

> shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

52 U.S.C. § 20507(i)(1). It adds that such records "shall include lists of the names and addresses of all persons to whom" address confirmation notices are sent "and information concerning whether or not each such person has responded to the notice." *Id.* § 20507(i)(2).

The NVRA provides for a private right of action. A person "aggrieved by a violation" who

gives written notice "to the chief election official of the State involved"[1] may sue if "the violation is not corrected within 90 days" (or a shorter time for violations closer to an election) for declaratory or injunctive relief. 52 U.S.C. § 20510(b)(1) & (2). In such an action, "the court may allow the prevailing party … reasonable attorney fees." *Id.* § 20510(c).

Illinois law allows the "centralized statewide voter registration list" to be provided to a "local political committee" or a "governmental entity for a governmental purpose." 10 ILL. COMP. STAT. 5/1A-25. However, with respect to any other person, the registration list may only be provided "subject to security measures adopted by the State Board of Elections." *Id.* These measures "at a minimum, shall include" public viewing of the registration database at "the Springfield office of the State Board of Elections, during normal business hours," with the further restriction that a "person viewing the list under this exception may not print, duplicate, [or] transmit" the list. *Id.*

### Plaintiffs' Allegations.

The complaint was filed on September 18, 2020. ECF No. 1. It alleges that Defendants are violating constitutional and statutory provisions of federal law by unlawfully withholding records squarely covered by the public disclosure provision of the NVRA. *Id.* ¶¶ 29-47.

Plaintiffs are the Illinois Conservative Union, a non-profit organization incorporated under the laws of Illinois, with its headquarters in Carol Stream, Illinois, and three of its executive members, who are also lawfully registered voters in Illinois. ECF No. 1, ¶¶ 4-7. Plaintiff Conservative Union exists to engage and educate grassroots conservative activists throughout Illinois with the goal of having a positive impact on the financial and moral trajectory of the state.

---

[1] Defendant Sandvoss is the chief State election official for Illinois, responsible for coordinating the State's compliance with the NVRA. *See* 26 Ill. Adm. Code § 216.100(b)-(c); 52 U.S.C. § 20509.

*Id.* ¶ 13. It fulfills its mission, among other means, through public records requests. *Id.*

Concerned about the accuracy of Illinois' voter registration list and whether ineligible registrants were being removed in accordance with the NVRA, Plaintiffs sent a Section 8(i) public records request to Defendants seeking records relating to list maintenance, including copies of the official list of eligible voters. ECF No. 1, ¶¶ 16-18; ECF No. 1-1. In response, Defendants provided a disc with files related to list maintenance, but withheld the registered voter list. ECF No. 1, ¶ 21; ECF No. 1-2. According to Defendants, Illinois law prohibits electronic release of the full voter list except to political committees and governmental bodies. ECF No. 1, ¶ 21; ECF No. 1-2 at 1. Defendants invited Plaintiffs to view the voter list at Defendants' Springfield office. *Id.* ¶ 23.

On August 28, 2019, Plaintiffs undertook the time and expense to travel to Springfield, Illinois to obtain copies of the official list of eligible voters. Once there, they were again informed of the state law restrictions. Defendants prohibited Plaintiffs from obtaining electronic copies of the list because none of the Plaintiffs were a "political committee" or "government body." ECF No. 1, ¶ 24. Instead, Plaintiffs were restricted to viewing millions of individual voter records on a computer, one record at a time, with virtually zero querying capabilities, and no ability to sort or organize the records in the statewide database. *Id.* ¶ 25. Given these restrictions, it was not possible to effectively determine the accuracy and currency of the official list of eligible voters. *Id.*

On November 18, 2019, Plaintiffs provided statutory notice to Defendant Steve Sandvoss, Executive Director of the Illinois State Board of Elections, of the resulting violation of the public disclosure provisions of the NVRA. ECF No. 1, ¶ 26. Defendants failed to produce the registration list or otherwise respond to Plaintiffs' letter with the statutory 90-day period. *Id.* ¶¶ 27-28.

### *Defendants' Motion to Dismiss.*

Defendants have moved to dismiss the complaint, arguing that it fails to state a claim under

the NVRA because voter registration records do not constitute "records" under Section 8(i), and even if they do, the computer screen in Springfield provides sufficient access under the statute; and on the ground that there has been no federal preemption as Congress did not clearly express an intent to preempt. As set forth below, Defendants totally neglect case law expressly holding that voter registration records are "records" under Section 8(i). Their interpretation of what the NVRA does require, moreover, is contrary to the NVRA's plain language and would thwart its purpose. Defendants also ignore governing case law that, because the NVRA was enacted under the Elections Clause, Congress did not have to explicitly state an intention to preempt state law.

Defendants also argue that Plaintiffs lack Article III standing because they have not pleaded a concrete harm from being denied meaningful access to the voter registration records. As set forth below, this ignores the Supreme Court's repeated instruction that being denied access to information Congress has decided to make public constitutes an Article III injury.

Defendants argue that the Equal Protection claim should be dismissed because the challenged law has a rational basis, but the complaint alleges facts sufficient to contradict that assertion. Finally, Defendants' invocation of sovereign immunity fails, because Congress abrogated such immunity for claims under the NVRA.

## STANDARD OF REVIEW

A complaint survives a Rule 12(b)(6) motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. A district court must construe the complaint "in the light most favorable to the plaintiffs, accepting as true all well-

pleaded facts alleged and drawing all permissible inferences in their favor." *In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 782 (N.D. Ill. 2016) (quoting *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014)).

A Rule 12(b)(1) motion "asks the court to dismiss an action over which it allegedly lacks subject matter jurisdiction." *Motel Aetnastak, Inc. v. Miessen*, 998 F. Supp. 2d 694, 705 (N.D. Ill. 2014). Though the "burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction," "[a]ll reasonable inferences are drawn in favor of the plaintiff, and all well-pleaded allegations are accepted as true." *Id.* (citing *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999)).

A further consideration applies where, as here, a Rule 12(b)(1) motion relies on what is basically an argument on the merits. "[W]here a challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action … jurisdiction cannot be defeated by the possibility that plaintiff may not have stated a cause of action." *Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 279 (7th Cir. 1986) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)). Unless a claim is "clearly … immaterial," made solely to obtain jurisdiction, or "wholly insubstantial and frivolous," the district court "should take jurisdiction and handle defendants' motion as a direct attack on the merits." *Id.* at 279-80 (citing, *inter alia*, *Bell*, 327 U.S. at 682-83) (internal quotations omitted)); *accord*, *Mungiovi v. Chicago Hous. Auth.*, 901 F. Supp. 261, 263-64 (N.D. Ill. 1995).

## ARGUMENT

### I. The Complaint Plausibly Alleges That Illinois' Statewide Voter Registration List Is a Record Under Section 8(i) of the NVRA, and That Illinois' Restrictions Conflict With and Are Preempted by It.

#### A. The Voter Registration List Is a "Record" Under Section 8(i).

Defendants argue, without citing any case law, that "Congress did not specify" in the NVRA "that the voter lists themselves are considered to be part of the records showing how the

- 6 -

state is maintaining the accuracy of voter lists." ECF No. 5 at 7. Defendants are wrong.

This issue was squarely decided in *Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425 (D. Md. 2019).[2] The plaintiff there asked for "production of the voter registration list for Montgomery County[, Maryland]," and the defendants refused, arguing "that a voter list is not a 'record' under Section 8(i)." *Id.* at 434. The court granted summary judgment for the plaintiff on this issue. *Id.* at 446. It was persuaded that the voter registrations themselves were part of a "program or activity" to keep them accurate. The "process of creating, updating, and auditing registrations 'is a "program" … because it is carried out in the service of a specified end— maintenance of voter rolls—and it is an "activity" because it is a particular task . . . of [Maryland] election employees.'" *Id.* (quoting *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 335 (4th Cir. 2012); 52 U.S.C. § 20507(i)). "[T]he voter registrations are clearly records" because "they contain the information on which Maryland election officials rely to monitor, track, and determine voter eligibility." *Id.* Accordingly, "a voter list," which "is simply a pared down compilation of voter registrations," is also a "record" under the statute. *Id.* at 440. *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 723 (S.D. Miss. 2014) relied on the same reasoning, concluding that "the Voter Roll is a 'record' and is the 'official list[] of eligible voters' under" Section 8(i), because the "process of compiling, maintaining, and reviewing the voter roll is a program or activity … that ensures the official roll is … accurate and current." *See also Bellitto v. Snipes*, No. 16-cv-61474-BLOOM/Valle, 2018 U.S. Dist. LEXIS 103617, at *13 (S.D. Fla. Mar. 30, 2018) ("election officials must provide full public access to all records related to their list maintenance activities, including their voter rolls"). No court has ever held that voter lists are *not* Section 8(i) "records."

Other language in the NVRA, in particular the phrase "all records concerning," supports

---

[2]      Defendants cite only an earlier order from this case denying a motion to dismiss. ECF No. 5 at 8.

the prevailing interpretation. The "use of the word 'all' [as a modifier] suggests an expansive meaning because 'all' is a term of great breadth." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 336 (4th Cir. 2012) (citation and internal quotations omitted); *see U.S. v. Wilson*, 159 F.3d 280, 291 (7th Cir. 1998) (courts must "look to the language used by Congress, giving the words their ordinary meaning"). "Concerning" is a similarly broad term. *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2008) ("Concern" includes "relate to," "be about," "bear on," "have an influence on," "INVOLVE"); *Bloomberg L.P. v. United States FDA*, 500 F. Supp. 2d 371, 377 n.3 (S.D.N.Y. 2007) (Local Rules define "concerning" as "relating to, referring to, describing, evidencing, or constituting"). In ordinary speech, voter lists "concern"—that is, they "relate to," "bear on," "influence," "involve," and "evidence"—all of the activities that keep them up to date. Surely, a statute calling for "all records concerning" the accuracy of voter lists includes the lists themselves. Indeed, it would be strange if this were not so. It would be as if a statute requiring disclosure of "all records concerning tax returns" were held not to include the tax returns themselves, or as if a statute referring to "all records concerning law firm billing records" did not include those billing records. The primary records bearing on programs and activities to ensure the accuracy and currency of voter lists must be the voter lists themselves.

As a final matter, Defendants argue that they are not required to provide "*all* the information contained in voter registration lists." ECF No. 5 at 7. But as the court in *Lamone* noted, every "voter list contains only a subset of the voter data" for each voter. 399 F. Supp. 3d at 440. Plaintiffs particularized their request to "copies of the most recent voter registration lists drawn from the voter registration database [] for Illinois including fields indicating a unique voter/state ID, each registered voter['s] name, full date of birth, home address, most recent voter activity, active, inactive or cancelled status." ECF No. 1-1 at 1. At a minimum, they are entitled to whatever

"subset of the voter data" must be provided under federal and state law to local, political committees. Defendants also argue, with particular reference to "voting history," that the NVRA "mandates that only two-years' worth of records must be made available." ECF No. 5 at 7. That is not what the law says, however. Section 8(i)

> does not provide that a state need not produce a record if it is over two years old. Rather, the statute provides that a state must retain the applicable records for at least two years. Accordingly, if a state chooses to retain a record beyond two years, the NVRA requires the state to produce that record.

*Lamone*, 399 F. Supp. 3d at 441.

### B.   The Restrictions Contained in Illinois Law Conflict With the Requirements of Section 8(i) of the NVRA.

As the Fourth Circuit has noted, the NVRA's public disclosure provision "embodies Congress's conviction that Americans['] … right to exercise their franchise … must not be sacrificed to administrative chicanery, oversights, or inefficiencies." *Long*, 682 F.3d at 334-35; *see* H.R. REP. NO. 103-9, at 14, *reprinted in* 1993 U.S.C.C.A.N. 105, 118 ("accurate and current voter registration lists are essential to the integrity of the election process and for the protection of the individual"). Organizations that monitor states' list maintenance efforts play a key role in enforcing the NVRA, because they "have the resources and expertise that few individuals can marshal. By excluding these organizations from access to voter registration lists," a state "undermines Section 8(i)'s efficacy." *Lamone*, 399 F. Supp. 3d at 445.

Accordingly, courts show little patience for interpretations that try to restrict the reach of Section 8(i) on strained or hyper-technical grounds. For example, in *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1336 (N.D. Ga. 2016), the court rejected the argument that electronic records were not covered, noting that this would allow easy circumvention and "effectively render Section 8(i) a nullity." Such a "narrow interpretation of 'records'—which would reduce the scope of

information available to the public" is "inconsistent with the statutory purposes of the NVRA." *Id.*; *see Lamone*, 399 F. Supp. 3d at 441 ("common sense" cannot abide "a purposeless obstruction" of Section 8(i) "based on semantics").

The requirements of 10 ILCS 5/1A-25 constitute just such a "purposeless obstruction." It is literally impossible to monitor Illinois' list maintenance by reviewing many millions of registration records one at a time on a computer screen. Such restrictions make a mockery of Section 8(i), as much as a requirement that Plaintiffs wear blindfolds.

Defendants try to defend the 10 ILCS 5/1A-25 with just the kind of strained, semantic argument rejected in *Kemp* and *Lamone*. They argue that the text of Section 8(i) provides that photocopying at a reasonable cost is "not guaranteed" but is "an option, *where available*." ECF No. 5 at 7. What Defendants seem to suggest is that state authorities have the "option" to restrict copying, even where there are physical facilities for making copies. Stated differently, Defendants interpret "where available" to mean, in essence, "where *the State chooses to make it* available." By this logic, the thrust of the photocopying requirement in Section 8(i) is that "if the State chooses to allow photocopying, it must allow photocopying."

This reading makes no sense. At a minimum, it renders the provision about copying completely superfluous. *See Motorola Solutions v. Hytera Communs. Corp.*, No. 1:17-cv-1973, 2020 U.S. Dist. LEXIS 35942 (N.D. Ill. Jan. 31, 2020) ("where a statute can be reasonably interpreted so as to give effect to all its provisions, a court will not adopt a strained reading which renders one part superfluous") (citation and internal quotations omitted). The clear meaning of "where available" in Section 8(i) is "where the capability for copying exists." And Defendants clearly have the capability to provide the electronic registration files to Plaintiffs, as they proved when they sent a data disc containing inactive registrations. ECF No. 1-2 at 1.

- 10 -

Defendants also argue that Plaintiffs have not explained how they will use the electronic data to monitor compliance if they do receive it, or why they believe Illinois' voter rolls are inaccurate. ECF No. 5 at 11. But Plaintiffs are not suing Illinois over inaccurate voter rolls. Plaintiffs are only suing to obtain documents. And while Plaintiffs certainly could provide details about how to use a voter registration list to monitor Illinois' voter list maintenance—for example, searching for duplicate registrations, for registrants who are underage or improbably old, or comparing registrations across state lists—Plaintiffs are not obligated to make such an explanation before receiving documents under Section 8(i).[3] *See Judicial Watch, Inc. v. Lamone*, 455 F. Supp. 3d 209, 225 (D. Md. 2020) (where plaintiff was entitled to particular information under Section 8(i) it "need not demonstrate its need" for it "in order to facilitate its effort to ensure that the voter rolls are properly maintained").

### C. Section 8(i) Supersedes Conflicting Provisions of Illinois Law as a Matter of "Obstacle" and "Field" Preemption.

The Elections Clause of the U.S. Constitution "invests the States with responsibility for the mechanics of congressional elections … but only so far as Congress declines to pre-empt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997) (citations omitted). If Congress acts pursuant to the Elections Clause, then any state law that conflicts with those regulations is invalid. *See Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n.*, 576 U.S. 787, 789 (2015) ("The dominant purpose of the Elections Clause, the historical record bears out, was to empower Congress to override state election rules, not to restrict the way States enact legislation."); *Harkless v. Brunner*, 545 F.3d 445, 454 (6th Cir. 2008) ("The Elections Clause" gives Congress "plenary authority over federal elections," "explicitly ensur[ing] that all conflicts with similar state laws

---

[3]     In the event the Court deems it necessary, Plaintiffs respectfully request leave to amend the complaint to explain how they would use the voter registration list to monitor Illinois' compliance.

would be resolved wholly in favor of the national government"); DEBATES IN THE SEVERAL STATE CONVENTIONS ON THE ADOPTION OF THE FEDERAL CONSTITUTION 68 (Jonathan Elliot ed., 1836) (the Elections Clause "enables Congress to alter such regulations as the states shall have made with respect to elections"). The NVRA is part of "a complex superstructure of federal regulation atop state voter-registration systems," adopted pursuant to a clause that "empowers Congress to pre-empt state regulations governing the 'Times, Places and Manner' of holding congressional elections." *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 5, 8 (2013); *Harkless*, 545 F.3d at 455 (NVRA passed pursuant to the Elections Clause).

Defendants are plainly wrong when they argue that Congress must be explicit when it preempts state election regulations under the Elections Clause. ECF No. 5 at 7 (state law "can only be preempted by an explicit act of Congress"). "[T]he logic behind the plain statement rule," the principle "that Congress must be explicit when it encroaches in areas traditionally within a state's core governmental functions[,] does not apply when Congress acts under the Elections Clause, as it did in enacting the NVRA." *Harkless*, 545 F.3d at 455 (citations omitted); *see id.* at 454 (contrasting the Commerce Clause). Courts have found that the NVRA preempts conflicting state law in a number of contexts. *See Lamone*, 399 F. Supp. 3d at 445 (preempting Maryland restriction limiting access to voter registration list to registered voters); *Inter Tribal Council*, 570 U.S. at 11-12 (provision that states "accept and use" the federal registration form preempts conflicting Arizona law requiring proof of citizenship); *Fish v. Schwab*, 957 F.3d 1105, 1111 (10th Cir. 2020) (Kansas' documentary proof of citizenship requirement preempted by Section 5 of the NVRA); *Common Cause Ind. v. Lawson*, 937 F.3d 944, 962 (7th Cir. 2019) (plaintiffs showed likelihood of success on the merits in challenging Indiana's law removing voters prior to sending address confirmation notices under the NVRA).

In general, federal law can preempt state law either expressly or through implication. *See Gade v. Nat'l Solid Wastes Management Ass'n*, 505 U.S. 88, 98 (1992). Absent explicit language, Congress can preempt state law either by means of "field preemption" or because the state law conflicts with the objectives of federal law. *Id.* at 98. Under field preemption, Congress preempts state law "where the scheme of federal regulation is 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.'" *Id.* (citation omitted). Conflict preemption occurs either "where 'compliance with both federal and state regulations is a physical impossibility'" or "where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (citations omitted).

There is clearly "conflict" or "obstacle preemption," because Illinois' restrictions in 10 ILCS 5/1A-25 requiring Plaintiffs to review the State's registration records under impossible conditions that effectively nullify their informational rights under Section 8(i) "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Gade*, 505 U.S. at 98. In addition, the extensive regulatory scheme imposed by Congress when it enacted the NVRA shows that there is "field preemption" respecting contrary Illinois law. For these reasons, Illinois' restrictions on Plaintiffs' access to the State's voter registration list are preempted.

## II.     Plaintiffs Have Standing.

The complaint alleges that Plaintiffs were denied meaningful access to records concerning Illinois' "programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters" that they were entitled to access under the NVRA. ECF No. 1, ¶¶ 30-35; *see* 52 U.S.C. § 20507(i)(1). The Supreme Court has repeatedly emphasized that this kind of informational injury confers Article III standing. In *FEC v. Akins*, 524 U.S. 11, 21 (1998),

- 13 -

the Court found that an injury "consist[ed] of" a party's "inability to obtain information" concerning "campaign-related contributions and expenditures" which, on their "view of the law," which was the Federal Election Campaign Act, must be made public. The Court noted that it "has previously held that a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *Id.* (citing *Public Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989) (standing based on failure to provide information under the Federal Advisory Committee Act)); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-374 (1982) (injury based on denial of a "statutorily created right to truthful housing information"). The same reasoning applies to a failure to provide information required by Section 8(i) of the NVRA. *See Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697, 702-704 (E.D. Va. 2010) (standing based on violation of Section 8(i) of the NVRA, citing *Akins* and *Public Citizen*).

Defendants' argument that the violation of a statute is insufficient to confer standing simply ignores these relevant precedents. ECF No. 5 at 12. Indeed, the recent Supreme Court case they cite expressly confirmed the validity of this line of cases. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (citing *Akins* and *Public Citizen*).

Defendants also argue that, because Plaintiffs "were provided access to voter registration lists," they were not injured and so do not have standing. ECF No. 5 at 10 (point II). As set forth above, this access was worthless. In any case, this suggestion is an attempt to turn a *merits* argument, concerning whether Section 8(i) was actually violated, into an argument that Plaintiffs lack Article III *standing*. As the Seventh Circuit has held, this kind of dual argument is not a basis for dismissing on grounds of jurisdiction. *Malak*, 784 F.2d at 279-80 (citing *Bell*, 327 U.S. at 682).

## III.    Plaintiffs Have Stated a Claim Under the Fourteenth Amendment.

The complaint alleges that Defendants' refusal to provide Plaintiffs documents pursuant to

Section 8(i) that they willingly provide to private, local political committees violates Plaintiffs' right under the Constitution to the equal protection of the laws. ECF No. 1, ¶¶ 41-44; U.S. CONST. amend. XIV, § 1. *See Libertarian Party of Ind. v. Marion Cnty. Bd. of Voter Reg.*, 778 F. Supp. 1458, 1464-65 (S.D. Ind. 1991) (state law restricting computer tape of registration list to major political parties held to violate Equal Protection rights of minor parties). Defendants respond that Illinois' law under which Plaintiffs' review was restricted is rationally related to a legitimate state interest. ECF No. 5 at 12. But on a motion to dismiss, the government's justification of rationality "cannot defeat the plaintiff's benefit of the broad 12(b)(6) standard." *Wroblewski v. City of Washburn*, 965 F.2d 452, 459 (7th Cir. 1992). Rather, a complaint states a claim under the rational basis test if it "allege[s] facts sufficient to overcome the presumption of rationality that applies to government classifications." *Id.*

Though the rational relationship standard is deferential, it is not without teeth. The "purpose of the equal protection clause … is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution." *Sioux City Bridge Co. v. Dakota Cnty.*, 260 U.S. 441, 445 (1923). "Simply because a class of individuals is not part of a suspect or quasi-suspect class does not mean that they are not protected under the Equal Protection Clause." *Baumgardner v. Cnty. of Cook*, 108 F. Supp. 2d 1041, 1054 (N.D. Ill. 2000). A plaintiff in a non-suspect class can plead an Equal Protection claim where "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (citations omitted).

The first problem with Defendants' putative justification is that the complaint alleges that Defendants' failure to provide documents violates both the Equal Protection Clause *and* the

NVRA. ECF No. 1, ¶¶ 32-33, 44. It is hard to imagine how the challenged law could survive *any* level of scrutiny under the Fourteenth Amendment, given that it is alleged to violate an independent federal statutory obligation contained in the NVRA. Stated differently, Illinois can never claim a legitimate state interest in violating federal law. Further, the text of the relevant state law claims that its purpose is "[t]o protect the privacy and confidentiality of voter registration information." 10 ILCS 5/1A-25. Defendants make the same point in their brief. ECF No. 5 at 12. Yet Defendants do not explain how limiting distribution to political committees as opposed to non-profit organizations or Illinois citizens, such as Plaintiffs, furthers Defendants' interest in protecting anyone's privacy. Nor could they. Defendants have already provided to Plaintiffs a data disc containing the registrations of voters who were sent address confirmation notices since January 2017, including voters who "responded to the notice" and remain registered. ECF No. 1-2 at 1. The claimed justification is particularly unpersuasive given that Illinois has already produced this list. *See Lamone*, 399 F. Supp. 3d at 445 (finding Maryland's justification to protect voters' personal information "does not advance a valid state interest" when state law permitted other ways of sharing voters' information). Defendants have arbitrarily created two classes of organizations, one of which may receive electronic copies of the voter list while the other may not. Accordingly, Plaintiffs have stated a claim for a violation of the Fourteenth Amendment.

## IV.    Defendants State of Illinois and State Board of Elections Cannot Claim Sovereign Immunity Respecting Claims Under the NVRA.

Defendants argue that sovereign immunity under the Eleventh Amendment bars claims against the State of Illinois and the State Board of Elections. Defendants are incorrect.[4]

---

[4]    Note that sovereign immunity does not bar any claims against Defendant Sandvoss, who is named in his official capacity as the chief State election. *See Ex Parte Young*, 209 U.S. 123, 159 (1908); ECF No. 1, ¶ 10 (Illinois and federal law designate Defendant Sandvoss as official responsible for NVRA compliance). Defendants tacitly concede this by omitting him from their argument. ECF No. 5 at 14.

Sovereign immunity is abrogated where Congress "unequivocally expressed its intent to abrogate the immunity," and "has acted 'pursuant to a valid exercise of power.'" *Seminole Tribe v. Fla.*, 517 U.S. 44, 55 (1996) (citation omitted). The NVRA authorizes private civil actions, provides that they may be commenced "in an appropriate district court" (52 U.S.C. § 20510(b)(1), (2)), and is replete with mandates that "each state shall …" take particular actions. *E.g.*, *id.* §§ 20503(a), 20505(a)(1), 20506(a)(1), 20507(a). These establish the *intent* to abrogate. *See Seminole*, 517 U.S. at 57 (relying on "numerous references to the 'State'" in provisions governing suit). The NVRA was enacted under the 14th Amendment. S. REP. NO. 103-6, at 3 (1993). This gives Congress *authority* to abrogate. *Seminole*, 517 U.S. at 59. The NVRA was also enacted under the Elections Clause, which gives "Congress plenary authority over federal elections." *Harkless*, 545 F.3d at 454-55. Indeed, precisely because state responsibilities for federal elections arise from powers delegated by Congress, and not reserved to the states by the Constitution, state sovereignty issues are less acute in this context. *See U.S. Term Limits v. Thornton*, 514 U.S. 779, 800-05 (1995) (discussing delegated versus reserved election duties).

There are cases holding that sovereign immunity bars NVRA claims. For the reasons set forth above, which these cases did not consider in any detail, Plaintiffs respectfully submit that they were wrongly decided. *See Krieger v. Virginia*, 599 F. App'x 112 (4th Cir. 2015) (brief, unpublished, non-precedential affirmance of dismissal of *pro se* suit); *Pub. Int. Legal Found., Inc. v. Bell*, No. 5:19-CV-248-BO, 2019 U.S. Dist. LEXIS 179485, at *5-6 (E.D.N.C. Oct. 16, 2019).

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss should be denied.

- 17 -

Respectfully submitted,

ILLINOIS CONSERVATIVE UNION, CAROL J. DAVIS, JANET L. SHAW, and LORETTA J. SAVEE

By:    /s/  Stephen F. Boulton

Dated: January 11, 2021

Paul J. Orfanedes (No. 6205255)
Robert D. Popper*
Eric W. Lee*
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, DC 20024
Phone: (202) 646-5172
rpopper@judicialwatch.org

H. Christopher Coates*
LAW OFFICE OF H. CHRISTOPHER COATES
934 Compass Point
Charleston, South Carolina 29412
Phone: (843) 609-7080
curriecoates@gmail.com

Stephen F. Boulton
Boulton & Associates
123 North Wacker Drive, Suite 1800
Chicago, Illinois 60606
Phone: (312) 343-3228
Facsimile: (773) 697-7046
sboulton@peraica.com

T. Russell Nobile*
JUDICIAL WATCH, INC.
Post Office Box 6592
Gulfport, Mississippi 39506
Phone: (202) 527-9866
rnobile@judicialwatch.org

*Application for Admission Pro Hac Vice Forthcoming