UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ILLINOIS CONSERVATIVE UNION; CAROL J. DAVIS; JANET L. SHAW; and LORETTA J. SAVEE, | ) ) ) ) |
| Plaintiffs, | ) ) |
| | ) No. 20 C 5542 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| STATE OF ILLINOIS; THE ILLINOIS STATE BOARD OF ELECTIONS; and BERNADETTE MATTHEWS, in her capacity as the Acting Executive Director of the Illinois State Board of Elections,[1] | ) ) ) ) ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiffs Illinois Conservative Union, Inc. ("ICU"), Carol J. Davis, Janet L. Shaw, and Loretta J. Savee requested that the Illinois State Board of Elections (the "Board") produce electronic voter registration data for Illinois pursuant to Section 8(i) of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20501 *et seq.* When the Board refused to produce the list in electronic format and restricted viewing to a computer terminal at the Board's office, Plaintiffs filed this lawsuit against Defendants the State of Illinois (the "State"), the Board, and Bernadette Matthews, in her official capacity as the Board's acting executive director. Plaintiffs allege that Defendants' refusal to provide them with the requested information violates Section 8(i) of the NVRA and the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs request declaratory and injunctive relief that would require Defendants to produce the Illinois voter registration list in a usable, electronic format. Defendants have filed a

---
[1] The Court substitutes Matthews, the acting executive director, pursuant to Federal Rule of Civil Procedure 25(d).

motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6). Because Plaintiffs have adequately alleged an injury in fact and plausible arguments exist that the restrictions on Plaintiffs' right of access to voter information violates Section 8(i) of the NVRA and the Equal Protection Clause, the Court allows Plaintiffs' claims to proceed. Although sovereign immunity bars Plaintiffs from proceeding against the State and the Board on the equal protection claim, leaving only Matthews as a Defendant on that claim, the Court reserves ruling on whether Plaintiffs can pursue the NVRA claim against the State and the Board pending supplemental briefing.

## BACKGROUND[2]

**I.    The NVRA**

Congress adopted the NVRA, which regulates voter registration, for several purposes, including to "protect the integrity of the electoral process" and "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501. Among other things, the NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of" death or a change in residence. 52 U.S.C. § 20507(a)(4). The NVRA otherwise prohibits states from removing names from the voter rolls unless the individual voter requests removal, state law requires removal, or the state removes the individual voter pursuant to a mandatory removal program. *Id.* § 20507(a)(3).

Section 8(i) of the NVRA provides for public disclosure of certain voter registration activities. *Id.* § 20507(i). Specifically, Section 8(i) provides:

---

[2] The Court takes the facts in the background section from Plaintiffs' complaint and the exhibits attached thereto and presumes them to be true for the purpose of resolving the Defendants' motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

> Each State shall maintain for at least 2 years and shall make
> available for public inspection and, where available, photocopying
> at a reasonable cost, all records concerning the implementation of
> programs and activities conducted for the purpose of ensuring the
> accuracy and currency of official lists of eligible voters, except to
> the extent that such records relate to a declination to register to
> vote or to the identity of a voter registration agency through which
> any particular voter is registered.

*Id.* Section 8(i) further specifies that "records" include "lists of the names and addresses of all persons to whom notices described in subsection (d)(2) are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made." *Id.*

Illinois has designated the Board, an independent state agency, as the responsible party for supervising the administration of voter registration and election laws throughout Illinois. The Board maintains the centralized voter registration database required by the Help America Vote Act of 2002 and has the authority to carry out rules necessary to implement the NVRA's prescribed voter registration form. Matthews, the Board's acting executive director, serves as the State's chief election official, with responsibility for coordinating the State's compliance with the NVRA.

## II. Plaintiffs' Records Request

ICU, a not-for-profit, non-partisan 501(c)(4) organization, seeks to engage and educate grassroots conservative activists in Illinois. Davis serves as ICU's chairman and Shaw is its vice-chair. Davis, Shaw, and Savee are all registered Illinois voters.

ICU and its members believe that the State's failure to comply with the NVRA's obligations could undermine election integrity and allow for improper or fraudulent voting. To address this concern, in recent years, ICU launched an election integrity program, which Shaw and Savee co-chair. The election integrity program has used the NVRA's public disclosure

3

provision to request and obtain records from Illinois jurisdictions about their voter list maintenance efforts.

As relevant to this litigation, on July 24, 2019, Plaintiffs sent a public records request pursuant to Section 8(i) of the NVRA to Steve Sandvoss, the Board's former executive director. Davis, Shaw, and Savee all signed the letter. Plaintiffs requested that the Board "make available to [it] all pertinent records by [the Board] or in [the Board's] possession, custody, or control concerning the 'implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency' of Illinois' official lists of eligible voters during the past 2 years." Doc. 1-1 at 1. Among other things, Plaintiffs requested the most recent voter registration list for Illinois, including fields for registered voters' names, full dates of birth, home addresses, most recent voter activity, unique voter IDs, and voting status. Additionally, Plaintiffs sought the names and addresses of all persons to whom the Board sent notices described in 52 U.S.C. § 20501(d)(2) and any responses to those notices, and manuals, training materials, and other documents concerning the Board's efforts to ensure the accuracy and currency of the voter list. Plaintiffs indicated they would use the records to ensure the accuracy and currency of the official list of eligible voters and not for other purposes. Plaintiffs included a check for $500, the standard fee charged to political committees for fulfilling statewide voter data requests.

On August 14, 2019, the Board's public information officer responded to Plaintiffs' request. The Board provided a disc containing a file of all registrations made inactive after January 1, 2017 and those voters' current status, which addressed Plaintiffs' request regarding the § 20501(d)(2) notices. The Board also sent Plaintiffs printed records of voter list maintenance activity summaries and electronic redacted versions of two manuals. But the Board denied Plaintiffs' request for the official list of eligible voters, maintaining that Illinois law

4

prohibited the electronic release of the full voter database to all but registered political committees and governmental bodies. The Board instead indicated that Plaintiffs could access information regarding Illinois' voter list maintenance efforts in person at the Board's main office in Springfield during normal business hours. The Board also returned Plaintiffs' $500 check.

On August 28, 2019, three ICU members, Shaw, Savee, and Nancy Hayes, visited the Board's main office to inspect and obtain copies of the official list of eligible voters in Illinois. Cheryl A. Hobson, the Board's deputy director of voter registration, informed them that they could not make copies of the statewide voter registration list, as Illinois law only allowed distribution to political committees and governmental bodies. The ICU members did review the voter records one at a time on a computer terminal, but they could not sort or organize the voter records and had only limited search abilities. Plaintiffs claim that, due to these restrictions, they could not assess the effectiveness of the State's efforts to ensure the accuracy and currency of the official list of eligible voters.

On November 18, 2019, Plaintiffs sent another letter to the Board, providing it with statutory notice of violations of Section 8(i) of the NVRA because it did not provide Plaintiffs with the requested electronic voter registration information. Plaintiffs also clarified that their request included voter history from 2008 to 2018. Plaintiffs indicated that they would bring suit if the Board did not correct the violation within ninety days. The Board received the letter on November 27, 2019 but did not respond or produce the requested electronic voter registration data. Plaintiffs filed this lawsuit on September 18, 2020.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Where, as here, a defendant challenges the sufficiency of

the allegations regarding subject matter jurisdiction—a facial challenge—the Court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences" in the plaintiff's favor. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). "[W]hen evaluating a facial challenge to subject matter jurisdiction," the Court employs the *Twombly-Iqbal* "plausibility" standard, "which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Id.* at 174.

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Standing

The Court starts with standing, which "is a threshold question in every federal case because if the litigants do not have standing to raise their claims the court is without authority to consider the merits of the action." *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016) (quoting *Freedom From Religion Found., Inc. v. Zielke*, 845 F.2d 1463, 1467

(7th Cir. 1988)). To establish standing to seek injunctive relief, Plaintiffs must allege (1) "an actual or imminent threat of suffering a concrete and particularized 'injury in fact,'" which (2) can fairly be traced to the defendant's conduct and (3) a favorable judicial decision will likely prevent or redress. *Common Cause Ind. v. Lawson*, 937 F.3d 944, 949 (7th Cir. 2019). "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, --- U.S. ----, 136 S. Ct. 1540, 1549 (2016); *see also Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017) (no standing for "a statutory violation completely removed from any concrete harm or appreciable risk of harm").

The NVRA provides a private right of action to any person "aggrieved by a violation" of the NVRA if, after providing written notice of the violation to the state chief election official, the state has not corrected the violation within ninety days of receipt of such notice. 52 U.S.C. § 20510(b). Plaintiffs argue that they have suffered an informational injury because Defendants have deprived them of meaningful access to voter records in violation of the NVRA. Courts have recognized that "the NVRA provides a public right to information." *Project Vote/Voting for Am., Inc. v. Long* ("*Project Vote I*"), 752 F. Supp. 2d 697, 703 (E.D. Va. 2010). The failure to provide access to this information thus constitutes a sufficiently particularized injury in fact for standing purposes. *See FEC v. Akins*, 524 U.S. 11, 21 (1998) ("[T]his Court has previously held that a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute."); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374 (1982) (individuals acting as "testers" who posed as renters or purchasers but never intended to rent or buy had standing to sue under the Fair Housing Act based on the alleged violation of their right to truthful information).

Defendants nonetheless argue that, in this specific case, Plaintiffs suffered no informational injury because Defendants provided them with access to the requested information, just not in Plaintiffs' preferred format. But this is a merits question, not one that affects the standing inquiry. *See United States v. Funds in the Amount of $239,400*, 795 F.3d 639, 645 (7th Cir. 2015) ("They may or may not succeed on the merits, but that is a different question [than whether parties have standing]."); *Sierra Club v. U.S. E.P.A.*, 774 F.3d 383, 389 (7th Cir. 2014) ("[I]n reviewing the standing question, the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims." (alteration in original) (quoting *City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003))); *Project Vote I*, 752 F. Supp. 2d at 704 (rejecting defendants' argument that plaintiff did not have standing because plaintiff did not have a right to the information requested because that argument "improperly conflate[s] the threshold standing inquiry with the merits" (citation omitted)). At this stage, Plaintiffs have sufficiently alleged an informational injury to allow them to proceed on their Section 8(i) claim. *See Pub. Int. Legal Found. v. Boockvar*, 370 F. Supp. 3d 449, 455–56 (M.D. Penn. 2019) (denial of requests to inspect records constituted an informational injury sufficient to confer Article III standing); *Project Vote I*, 752 F. Supp. 2d. at 703–04 (alleged informational injury for failure to make records publicly available sufficed for standing purposes).

Finally, Defendants argue that although Plaintiffs generally express a concern about the accuracy and currency of Illinois' voter lists, they do not explain how they seek to remedy any issues with those lists. Plaintiffs note that they need not substantiate their request to have standing to pursue their claim. *See Judicial Watch, Inc. v. Lamone* ("*Lamone II*"), 455 F. Supp. 3d 209, 225 (D. Md. 2020) ("Judicial Watch need not demonstrate its need for birth date

information in order to facilitate its effort to ensure that the voter rolls are properly maintained."). Nonetheless, Plaintiffs explain that access to the voter list would allow them to monitor Illinois' voter list maintenance efforts by searching for duplicate registrations and registrants who are underage or improbably old, in addition to comparing registrations across state lists. Although not required, this additional explanation addresses Defendants' stated concern. *See Akins*, 524 U.S. at 21 ("The 'injury in fact' that respondents have suffered consists of their inability to obtain information—lists of AIPAC donors (who are, according to AIPAC, its members), and campaign-related contributions and expenditures—that, on respondents' view of the law, the statute requires that AIPAC make public. There is no reason to doubt their claim that the information would help them (and others to whom they would communicate it) to evaluate candidates for public office, especially candidates who received assistance from AIPAC, and to evaluate the role that AIPAC's financial assistance might play in a specific election. Respondents' injury consequently seems concrete and particular."). The Court therefore concludes that Plaintiffs have sufficiently alleged that they have standing to pursue their claims.

## II.     The NVRA Claim (Count I)

Defendants argue that Plaintiffs cannot pursue their NVRA claim because the NVRA does not entitle them to unfettered access to the State's voter rolls. Instead, Defendants maintain that Section 1A-25 of the Illinois Election Code, 10 Ill. Comp. Stat. 5/1A-25, does not conflict with the NVRA and so is an appropriate limitation on the manner by which Plaintiffs may access voter records. Plaintiffs, on the other hand, argue that the NVRA preempts Section 1A-25 because its restrictions on the right to review voter registration information effectively nullifies their Section 8(i) right to inspect voter registration records.

Initially, Defendants argue that the NVRA only requires disclosure of records related to how the State maintains its eligible voter list and not the voter lists themselves, pointing out that Section 8(i) uses language concerning "the implementation of programs and activities." *See* 52 U.S.C. § 20507(i)(1). Defendants, however, do not develop this argument, failing to provide any legal authority for their preferred construction of the statutory language. *See Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) (the court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel"); *United States v. Elst*, 579 F.3d 740, 747 (7th Cir. 2009) ("Perfunctory and undeveloped arguments as well as arguments unsupported by pertinent authority are waived."). Although Defendants correctly note that the Seventh Circuit and Supreme Court have not addressed the proper construction of Section 8(i), the courts that have addressed the question have uniformly reached the conclusion that the NVRA's reference to "records" in Section 8(i) includes voter list data. *See, e.g.*, *Project Vote/Voting for Am., Inc. v. Long* ("*Project Vote II*"), 682 F.3d 331, 335–36 (4th Cir. 2012) (registration applications qualify as records under Section 8(i)); *Judicial Watch, Inc. v. Lamone* ("*Lamone I*"), 399 F. Supp. 3d 425, 439–41 (D. Md. 2019) (voter registration lists fall within Section 8(i) because the lists compile multiple individual voter registration applications); *Pub. Int. Legal Found. v. Boockvar*, 431 F. Supp. 3d 553, 558–61 (M.D. Penn. 2019) (reading Section 8(i) disclosure provision broadly to allow disclosure of voter-related documents, including voter lists); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1341 (N.D. Ga. 2016) ("The Court concludes that, in addition to requiring records regarding the processes a state implements to ensure the accuracy and currency of voter rolls, considering the NVRA as a consistent whole, individual applicant records are encompassed by the Section 8(i) disclosure requirements."); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 719 (S.D. Miss. 2014) ("[T]he term 'all

records,' as the Fourth Circuit has observed, has an 'expansive meaning,' and encompasses a variety of voter registration and removal documents." (quoting *Project Vote II*, 682 F.3d at 336)). Because Defendants have not persuasively identified a basis for departing from these well-reasoned decisions, at the pleading stage, the Court accepts that Plaintiffs' request seeks voter registration information that falls within Section 8(i)'s disclosure provision.

Alternatively, Defendants argue that the NVRA does not preempt Section 1A-25's restrictions on Plaintiffs' access to voter registration information. Section 1A-25 provides, in relevant part:

> To protect the privacy and confidentiality of voter registration information, the disclosure of any portion of the centralized statewide voter registration list to any person or entity other than to a State or local political committee and other than to a governmental entity for a governmental purpose is specifically prohibited except as follows: (1) subject to security measures adopted by the State Board of Elections which, at a minimum, shall include the keeping of a catalog or database, available for public view, including the name, address, and telephone number of the person viewing the list as well as the time of that viewing, any person may view the list on a computer screen at the Springfield office of the State Board of Elections, during normal business hours other than during the 27 days before an election, but the person viewing the list under this exception may not print, duplicate, transmit, or alter the list; or (2) as may be required by an agreement the State Board of Elections has entered into with a multi-state voter registration list maintenance system.

10 Ill. Comp. Stat. 5/1A-25.

Because Congress passed the NVRA pursuant to the Elections Clause, the Elections Clause, not the Supremacy Clause, provides the proper starting point for the preemption analysis. *Hosemann*, 43 F. Supp. 3d at 730 ("Because Congress's power to enact the NVRA derives from the Elections Clause, preemption analysis in this case is governed by that clause, not the Constitution's Supremacy Clause." (citations omitted)). The traditional presumption against preemption does not apply in Elections Clause cases. *Arizona v. Inter Tribal Council of Ariz.*,

*Inc.*, 570 U.S. 1, 14 (2013); *Lamone I*, 399 F. Supp. 3d at 444. "When Congress legislates with respect to the 'Times, Places and Manner' of holding congressional elections, it *necessarily* displaces some element of a pre-existing legal regime erected by the States." *Inter Tribal Council*, 570 U.S. at 14. "Because the power the Elections Clause confers is none other than the power to pre-empt, the reasonable assumption is that the statutory text accurately communicates the scope of Congress's pre-emptive intent." *Id.*

Plaintiffs contend that Section 1A-25 conflicts with the NVRA because it "effectively nullif[ies] their informational rights under Section 8(i)" by requiring them to review registration records "under impossible conditions." Doc. 12 at 13. According to Defendants, however, Section 1A-25 can coexist with the NVRA because Section 1A-25 only limits the manner of access to voter registration records, maintaining that the NVRA does not preclude states from imposing reasonable limitations on the public's right to inspection.

Some courts have recognized that the NVRA does not provide the public with unfettered access to voter registration data because the disclosure of certain information, such as social security numbers, implicates legitimate privacy concerns. *See, e.g.*, *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, --- F. 3d ----, 2021 WL 1877195, at *5 (4th Cir. 2021) ("[T]he term 'all records' in the disclosure provision does not encompass any relevant record from any source whatsoever, but must be read in conjunction with the various statutes enacted by Congress to protect the privacy of individuals and confidential information held by certain governmental agencies."); *Kemp*, 208 F. Supp. 3d at 1344 ("Section 8(i) requires the disclosure of individual voter registration records, but it does not require the disclosure of sensitive information that implicates special privacy concerns."); *Hosemann*, 43 F. Supp. 3d at 733 ("The term 'all records' does not require automatic disclosure of all information within the covered

12

records.  Congress's language in the Public Disclosure Provision does not preclude redaction of certain highly sensitive information contained within disclosable records."). Indeed, Defendants may have an argument that certain aspects of the voter registration information that Plaintiffs have requested (for example, full dates of birth) implicate legitimate privacy concerns. *See, e.g.*, *N.C. State Bd. of Elections*, 2021 WL 1877195, at *8–9 (ordering the district court to consider whether the plaintiff's records request implicated statutory restrictions on disclosure and to delineate redaction protocols to protect sensitive information); *Kemp*, 208 F. Supp. 3d at 1345 (ordering redaction of voter birth dates and parts of phone numbers, email addresses, and social security numbers).  But Defendants have not pointed to a statute specifically protecting any of Plaintiffs' requested information from disclosure, and so the Court does not consider whether Plaintiffs' request for information sweeps too broadly at this time.  *Cf. Lamone II*, 455 F. Supp. 3d at 224 (allowing disclosure of full birth dates where the Maryland state legislature had not enacted any law to safeguard birth dates from disclosure and the full birth dates appeared on completed voter registration applications).

Instead, Defendants rely on Section 1A-25, which does not restrict the disclosure of specific information contained in the voter registration list.  Rather, Section 1A-25 requires the public to view voter registration information on a computer screen at the Springfield, Illinois office of the Board during normal business hours and prohibits the printing, duplication, transmittal, or alteration of the accessed information.  Plaintiffs maintain that these access limitations conflict with Section 8(i)'s purpose to "assist the identification of both error and fraud in the preparation and maintenance of voter rolls" because they preclude Plaintiffs from meaningfully searching and examining the information.  *Project Vote II*, 682 F.3d at 339. Specifically, Plaintiffs contend that Section 1A-25's prohibition on photocopying violates

13

Section 8(i)'s requirement that states shall allow, "where available, photocopying at a reasonable cost." 52 U.S.C. § 20507(i). The parties disagree on the meaning of the phrase "where available," but the Court need not resolve that dispute now. At this stage, Plaintiffs have plausibly alleged that Section 1A-25's prohibition on photocopying conflicts with Section 8(i) and frustrates the NVRA's purpose of providing voter information to the public to help ensure the accuracy and currency of voter registration rolls. Therefore, Plaintiffs may proceed on their NVRA claim.[3]

## III. Equal Protection Claim (Count II)

Finally, Plaintiffs contend that Section 1A-25's restrictions on the general public's access to voter registration information while exempting state and local political committees from the restrictions violates their Fourteenth Amendment equal protection rights. Defendants acknowledge that Section 1A-25 treats political committees and the general public differently but argue that Plaintiffs have failed to allege that no rational basis exists for the classification.

The parties agree that because this claim does not involve a suspect class or a fundamental right, rational basis review applies. *See Segovia v. United States*, 880 F.3d 384, 390 (7th Cir. 2018). Under rational basis review, a Court "will invalidate [a law] only if there is no rational relationship between the law and some legitimate governmental purpose." *Id.* "[A] classification is generally valid as long as a rational basis is plausible, even if the legislature did not expressly endorse it." *St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.*, 919 F.3d

---

[3] Defendants also argue that in requesting an eleven-year voter history, Plaintiffs go beyond what Section 8(i) requires. But the Court agrees with Plaintiffs that Defendants read Section 8(i) too narrowly, with two years being the minimum number of years for which states must make records available. *See* 52 U.S.C. § 20507(i)(1) (states "shall maintain for *at least* 2 years"). To the extent that the State retains voter registration information beyond two years, Plaintiffs at least have an argument that the NVRA requires disclosure of the entirety of the information the State keeps on file. *See Lamone I*, 399 F. Supp. 3d at 441 ("[I]f a state chooses to retain a record beyond two years, the NVRA requires the state to produce that record.").

1003, 1010 (7th Cir. 2019). Section 1A-25 is entitled to "a strong presumption of validity," with Plaintiffs required to "negate 'every conceivable basis which might support' the classification" to succeed on the claim. *Id.* (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314–15 (1993)). But at the motion to dismiss stage, Plaintiffs need only "allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992).

Defendants posit that Section 1A-25 explicitly states a legitimate state interest for the differential treatment: "protect[ing] the privacy and confidentiality of voter registration information." 10 Ill. Comp. Stat. 5/1A-25. They maintain that requiring the public to access the information only under supervision curtails the potential for abuse and improper dissemination of private information. According to Defendants, although they provide such information to political committees and governmental entities to use for a governmental purpose, these entities have incentives not to abuse the information. Plaintiffs respond that Defendants' behavior undercuts the privacy and confidentiality justification, pointing out that Defendants provided Plaintiffs with a disc containing some voter information. But the fact that the statute may imperfectly protect the State's stated privacy and confidentiality purpose does not on its own create an equal protection violation. *See Dandridge v. Williams*, 397 U.S. 471, 485 (1970) ("[A] State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect."); *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1072 (7th Cir. 2013) ("A law can be underinclusive or overinclusive without running afoul of the Equal Protection Clause."). The allegedly imperfect fit, then, does not suffice to overcome the presumption of rationality, even at the motion to dismiss stage, given that the statute's access restrictions are

15

plausibly designed to reduce the likelihood of improper dissemination of sensitive voter information.

But Plaintiffs also argue that because they have alleged that Section 1A-25 violates the NVRA, it cannot survive rational basis review. They contend that the State cannot claim a legitimate interest in violating federal law, with any interest in privacy protections having to give way to the federal requirements. *See Nation v. San Juan Cnty.*, 150 F. Supp. 3d 1253, 1269 (D. Utah 2015) ("A county or other local governing body cannot have a legitimate governmental interest in violating state law."). The NVRA does not place restrictions on public access to voter records, with Section 8(i)'s public disclosure provision applying equally to all individuals. The potential clash between Section 1A-25 and the NVRA thus provides Plaintiffs with at least an argument for overcoming the presumption of rationality. Therefore, at this stage, the Court allows Plaintiffs to proceed on their equal protection claim.

## IV. Sovereign Immunity

Finally, having determined that Plaintiffs have sufficiently stated their claims, the Court considers Defendants' argument that sovereign immunity precludes Plaintiffs from proceeding against the State and the Board. The Eleventh Amendment bars suits brought against a state in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). Sovereign immunity does not apply where the state consents to suit or federal legislation abrogates the immunity pursuant to a constitutional grant of authority. *Tennessee v. Lane*, 541 U.S. 509, 517 (2004). The Eleventh Amendment also does not shield claims against state officials for injunctive relief because "official-capacity actions for prospective relief are not treated as actions

against the State."[4]  *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Ex parte Young*, 209 U.S. 123, 155–56 (1908)).

Initially, the Court agrees that Plaintiffs cannot proceed on their equal protection claim against the State and the Board.  Plaintiffs bring this claim pursuant to § 1983, which does not abrogate state sovereign immunity and does not allow claims against state agencies.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 58 (1989); *Kroll v. Bd. of Trs. of Univ. of Ill.*, 934 F.2d 904, 907, 910 n.7 (7th Cir. 1991).

Plaintiffs submit that Congress abrogated sovereign immunity for NVRA claims and so their NVRA claim may proceed against all Defendants.  To determine whether Congress abrogated state sovereign immunity, the Court considers first "whether Congress has 'unequivocally expresse[d] its intent to abrogate the immunity'" and second "whether Congress has acted 'pursuant to a valid exercise of power.'"  *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996) (alteration in original) (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)).  With respect to the first question, Plaintiffs argue that, by authorizing private civil actions in the NVRA and including mandates with which "each State shall" comply, Congress provided an unmistakably clear statement of its intent to abrogate.  *See, e.g.*, 52 U.S.C. §§ 20503(a), 20505(a), 20506 (a), 20507(a); *Nat'l Coal. for Students with Disabilities Educ. & Legal Def. Fund v. Allen*, 152 F.3d 283, 285 (4th Cir. 1998) ("The Act adopts procedures designed to make it easier to register to vote, and it requires the states to put these procedures into place."); *Stringer v. Hughs*, No. SA-20-CV-46-OG, 2020 WL 6875182, at *19 (W.D. Tex. Aug. 28, 2020) ("Congress's abrogation of immunity under the NVRA is clear and unequivocal.").  Plaintiffs argue that the statutory structure and language makes analysis of the intent to abrogate similar to

---

[4] Defendants concede that Plaintiffs' claims may proceed against Matthews under *Ex parte Young*, 209 U.S. at 155–56.

that in *Seminole Tribe*, where the Supreme Court concluded that "the numerous references to the 'State' in the text of § 2710(d)(7)(B) make it indubitable that Congress intended through the [Indian Gaming Regulatory] Act to abrogate the States' sovereign immunity from suit." 517 U.S. at 57. *But see Pub. Int. Legal Found., Inc. v. Bell*, No. 5:19-CV-248-BO, 2019 WL 5290920, at *2 (E.D.N.C. Oct 17, 2019) (Congress did not abrogate state immunity for NVRA suits because "the general authorization to bring suit in federal court provided in 52 U.S.C. § 20510(b)(2) 'is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment'" (quoting *Seminole Tribe*, 517 U.S. at 56)), *vacated sub nom. N.C. State Bd. of Elections*, 2021 WL 1877195.

As for the second question, Plaintiffs represent that, in enacting the NVRA, Congress acted pursuant to the Fourteenth Amendment. *See* S. Rep. 103-6 at 3 ("This Act seeks to remove the barriers to voter registration and participation under Congress' power to enforce the equal protection guarantees of the 14th Amendment to the Constitution."). Section 5 of the Fourteenth Amendment is one of the recognized bases for Congress' authority to abrogate sovereign immunity. *Seminole Tribe*, 517 U.S. at 59. Plaintiffs also rely on the fact that Congress enacted the NVRA pursuant to the Elections Clause, which gives Congress "'the power to override state regulations' by establishing uniform rules for federal elections, binding on the States." *Foster v. Love*, 522 U.S. 67, 69 (1997) (quoting *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 832–33 (1995)); *see* S. Rep. 103-6 at 4 ("Congress has the power to regulate Federal elections, including the establishment of national voter registration procedures for Presidential and congressional elections. Congress' power has been clearly established under the Times, Places and Manner Clause and the Necessary and Proper Clause of the Constitution."). It is not entirely clear whether the Elections Clause authorizes Congress to abrogate sovereign immunity, however.

18

*Compare Seminole Tribe*, 517 U.S. at 72 ("Even when the Constitution vests in Congress complete law-making authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States."), *with United States v. Louisiana*, 196 F. Supp. 3d 612, 657 (M.D. La. 2016) ("[O]nce Congress enacted the NVRA pursuant to its authority under the Elections Clause, the Eleventh Amendment could no longer immunize a state from any liability."), *vacated pursuant to settlement*, 2017 WL 4118968 (M.D. La. Aug. 21, 2017).

Defendants provide no specific response to Plaintiffs' arguments that Congress abrogated sovereign immunity under the NVRA. Because the issue implicates a significant constitutional question, the Court defers resolution of the issue and orders the parties to file supplemental briefs. The Court expects the parties to fully develop their arguments, citing to relevant caselaw and other legal authority to aid the Court in making its determination.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss [5]. The Court dismisses the equal protection claim (Count II) against the State and the Board. The Court reserves ruling on the State and the Board's sovereign immunity argument with respect to the NVRA claim. The Court orders the parties to file supplemental briefs addressing the question of whether Congress abrogated sovereign immunity under the NVRA, with citations to relevant legal authority, by July 2.

Dated: June 1, 2021

SARA L. ELLIS
United States District Judge