IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ILLINOIS CONSERVATIVE UNION, *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> ILLINOIS, *et al.*, <br><br> Defendants. | Civil Action No. 1:20-cv-5542 <br><br> District Judge Sara L. Ellis <br><br> Magistrate Judge Beth W. Jantz |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

NOW COME Plaintiffs, ILLINOIS CONSERVATIVE UNION, INC., CAROL J. DAVIS, JANET L. SHAW, and LORETTA J. SAVEE ("Plaintiffs"), and for their Supplemental Brief in opposition to Defendants' Motion to Dismiss state as follows:

Defendants previously filed a motion dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6), which the Court granted in part and denied in part on June 1, 2021. ECF 19. In its ruling, the Court reserved judgment on Defendants' argument that Plaintiffs' National Voter Registration Act of 1993 ("NVRA") claims against the State of Illinois and the Illinois State Board of Elections were barred under the Eleventh Amendment and, thus, should be dismissed pursuant to Rule 12(b)(6). The Court directed the parties to file supplemental briefing on the Eleventh Amendment and the question of whether Congress abrogated sovereign immunity under the NVRA, 52 U.S.C. § 20501 *et seq.*

Plaintiffs submit there are two bases for concluding that the Eleventh Amendment does not bar their claims against the State Defendants. First, Congress abrogated sovereign immunity under the NVRA. Second, under the "plan of the Convention" doctrine, states waived immunity under the Elections Clause. *See generally PennEast Pipeline Co., LLC v. New Jersey*, No. 19-1039, 2021

U.S. LEXIS 3564 (June 29, 2021).

## SOVEREIGN IMMUNITY UNDER THE NVRA

Defendants State of Illinois and State Board of Elections incorrectly contend that Plaintiffs' NVRA claims are barred because they have sovereign immunity under the Eleventh Amendment, which prohibits suits in federal court against nonconsenting states. There several exceptions to sovereign immunity, including waiver or consent, abrogation, the judicial doctrine from *Ex Parte Young*, and the "plan of the Convention" doctrine. *See generally Va. Office for Prot. & Advocacy v. Stewart,* 563 U.S. 247, 253 (2011)*; Hans v. Louisiana*, 134 U.S. 1, 10-15 (1890); *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990); and *Ex Parte Young*, 209 U.S. 123 (1908).

The primary exception addressed in Defendants' motion is whether Congress abrogated sovereign immunity when it passed the NVRA.[1] Abrogation involves two considerations. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) and *Kroll v. Bd. of Trs. of Univ. of Ill.*, 934 F.2d 904, 906-10 (7th Cir. 1991). First, there must be unequivocal language that Congress intended to abrogate. *Garrett*, 531 U.S. at 363. Second, Congress must have acted "pursuant to a valid grant of constitutional authority." *Id.*

## ARGUMENT

**I.  The NVRA's Text Shows that Congress Unequivocally Intended to Abrogate State Immunity.**

"Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement." *Seminole Tribe v. Fla.*, 517 U.S. 44, 55 (1996) (internal quotation and citation omitted). The intent to abrogate must be textual. *Dellmuth v. Muth*, 491 U.S. 223, 230

---

[1]   As the Court previously noted, Defendants concede that Plaintiffs' claims may proceed against Defendant Matthews under *Ex Parte Young*. ECF 19 at 17 n.4.

(1989). However, a specific statement clause is neither required nor necessary to show an intent to abrogate. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 76 (2000). Despite the omission of a specific abrogation clause, courts can, and do, still find clear legislative statements of intent to abrogate. *Seminole Tribe v. Fla.*, 11 F.3d 1016, 1024 (11th Cir. 1994), *aff'd*, 517 U.S. 44.

In *Seminole Tribe*, the Supreme Court found that the Indian Gaming Regulatory Act ("IGRA") did not abrogate state immunity. 517 U.S. at 47. Before it ultimately ruled that Congress lacked authority to abrogate, the Court evaluated whether IGRA included unequivocal abrogation language. *Id.* at 57. The Court detailed how the text of the IGRA included numerous references to the "State" before it concluded that the text made "it indubitable that Congress intended through the Act to abrogate the States' sovereign immunity from suit." *Id.*

The Court subsequently discussed in *Kimel v. Fla. Bd. of Regents* how courts should approach legislative text in evaluating congressional intent. In *Kimmel*, the Court determined that Congress unequivocally abrogated immunity in passing the Age Discrimination in Employment Act of 1967 ("ADEA"). 528 U.S. at 73-74. The Court reviewed the text from several different provisions of the ADEA as well as other congressional enactments for unequivocal language. *Id*. at 68. Finding such language, the Court explained that "our cases have never required that Congress make its clear statement in a single section or in statutory provisions enacted at the same time." *Id.* at 77. Justice Thomas, in dissent, agreed that the inquiry is not limited to looking at a single statutory provision, noting that "our previous cases have not required a clear statement to appear within a single section or subsection of an Act. […] Nor have our cases required that such separate sections or subsections of an Act be passed at the same time." *Id*. at 104 (Thomas, J. dissenting) (internal citation omitted).

Turning to the NVRA's text, Congress expressed its intent to abrogate throughout its

twelve sections. The NVRA authorizes private civil actions, provides that they may be commenced "in an appropriate district court" (52 U.S.C. § 20510(b)(1), (2)) and is replete with numerous mandates that "each state shall …" take particular actions. For example, the specific NVRA provision at issue in these proceedings, Section 8, requires, *inter alia*, "that each State shall conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of" the registrant dying or moving. 52 U.S.C. § 20507(a)(4)). Other provisions, which implement the other NVRA priorities such as improving voter registration and participation, are no different on this point. In Section 4, for example, Congress mandated that "each State shall establish procedures to register to vote in elections for Federal office" by motor vehicle driver's license application; by mail; and by in-person application at a State designated registration site and at State voter registration agencies. 52 U.S.C. § 20503(a). In Section 5, Congress determined that a voter registration application submitted at a State motor vehicle authority "shall serve as an application for voter registration with respect to elections for Federal office" and the State "may require only the minimum amount of information necessary" on such application. 52 U.S.C. § 20504(a)(1), (c)(2)(B). Likewise, in Section 6, Congress required that "[e]ach State shall accept and use" the voter registration application form established by the Federal Election Commission. 52 U.S.C. § 20505(a)(1). And Section 7 provides that "[e]ach State shall designate agencies for the registration of voters in elections for Federal office," including public assistance and disability service agencies. 52 U.S.C. § 20506(a)(1)-(2). These numerous references to the "State," along with the private right of action, establish a clear intent to abrogate.

While it has never addressed state immunity, the Court long ago ruled that Congress set forth a deliberate statutory scheme that requires states to implement practices that increase registration, participation, and integrity. The "NVRA imposes certain mandates on States,

describing those mandates in detail." *Young v. Fordice*, 520 U.S. 273, 286 (1997) (finding that neither the state nor its political subdivisions could implement the NVRA without the state first obtaining federal preclearance under the Voting Rights Act). Taken in whole, the NVRA's numerous mandates and references to the "State" show that Congress chose to subordinate state immunity and memorialize Congress' unequivocal intent to abrogate. *See generally Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003) (finding intent to abrogate by State liability language in the Family Medical Leave Act); *see also Kimel*, 528 U.S. at 73-74 and *Seminole Tribe*, 517 U.S. at 57.

Beyond its substantive provisions, the text of NVRA's enforcement procedures further illustrates Congress' intent to abrogate. The NVRA mandates that all enforcement actions must be brought in federal court and, save one exception, requires private parties to give the state's chief election official notice before filing suit. 52 U.S.C. § 20510. Notice is necessary so that the *State* is afforded the requisite opportunity to cure *its* violations. *Ass'n of Cnty. Organizations for Reform Now v. Miller*, 129 F.3d 833, 838 (6th Cir. 1997) (emphasis added). The federal government has a compelling interest to ensure that only federal courts decide disputes regarding violations of federal laws related to federal elections, while state sovereignty concerns are much less acute in this context, especially considering the plan of the convention doctrine. *See, infra,* Part III. This has certainly been the Court's approach in determining preemption under the Eleventh Amendment. *See also U.S. Term Limits v. Thornton*, 514 U.S. 779, 801-05 (1995) (recognizing that under "the plan of the Convention" state responsibilities related to federal elections arise from powers delegated, not reserved, under the constitution, raising fewer sovereignty concerns in the preemption context); and *Harkless v. Brunner*, 545 F.3d 445, 454-55 (6th Cir. 2008) ("The Elections Clause" gives Congress "plenary authority over federal elections," "explicitly ensur[ing]

that all conflicts with similar state laws would be resolved wholly in favor of the national government").

To be sure, even without abrogation, aggrieved parties can still seek relief under the judicial fiction from *Ex Parte Young*, 209 U.S. 123 (1908). *See also Idaho v. Coeur D'Alene Tribe*, 521 U.S. 261, 270 (1997) (referring to the *Young* doctrine as a "judicial fiction"). But the availability of this avenue of relief does not contradict all of the clear indications from the NVRA's text and substance that Congress intended to abrogate states' sovereign immunity under the Act. Congress would not have created a private right of action and specified the types of remedies available while denying private parties the ability to seek statutory relief, forcing them to seek relief under the judicial doctrine from *Young*. If that were the case, then Congress made that decision without ever mentioning it in either committee report. Nothing in the NVRA's text or congressional reports supports the belief that Congress chose to impose several new state mandates, and granted states the right to notice and the opportunity to cure any violation, all while allowing states to remain immune from private suits. Indeed, Plaintiffs have been unable to think of any other context wherein a party is responsible for implementation, entitled to pre-suit notice, and afforded the opportunity to cure a federal violation—yet immune from liability if it then fails to cure.

Abrogation under the NVRA has been addressed by a small number of courts with mixed results, none of which are binding on this Court. In *Krieger v. Virginia*, 599 F. App'x 112 (4th Cir. 2015), the Fourth Circuit issued a one paragraph per curium affirmance of a dismissal of a *pro se* NVRA suit. *See also Krieger v. Loudon County*, 2014 U.S. Dist. LEXIS 138293 (W.D. Va., Sept. 30, 2014). Notwithstanding the dubious value of *pro se* case involving the federal election code, this unpublished opinion is not binding precedent nor precedent within the meaning of stare decisis. *See United States v. Hall*, 858 F.3d 254, 283 (4th Cir. 2017).

The Eastern District of North Carolina ruled that the NVRA did not abrogate sovereign immunity in *Pub. Interest Legal Found., Inc. v. Bell*, No. 5:19-CV-248-BO, 2019 U.S. Dist. LEXIS 179485 (E.D.N.C. Oct. 16, 2019), *vacated sub nom. Pub. Interest Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257 (4th Cir. 2021). The record from that case reveals the state defendants relied on a peculiar reading from *Seminole Tribe*. *Pub. Interest Legal Found., Inc. v. Bell*, No. 5:19-CV-248-BO, ECF 27 at 4. The Fourth Circuit subsequently vacated and remanded that case without addressing sovereign immunity. To the extent that the Eastern District's ruling on sovereign immunity still stands, Plaintiffs respectfully submit that it was wrongly decided.[2]

As this Court noted in its June 1, 2021 order, the Middle District of Louisiana addressed state immunity under the NVRA. *United States v. Louisiana*, 196 F. Supp. 3d 612 (M.D. La. 2016). Before the case was settled, the court found that the NVRA had abrogated state immunity, explaining:

> This constitutionally bestowed power "is paramount, and may be exercised at any time, and to any extent which it deems expedient; and so far as it is exercised, and no farther, the regulations effected supersede those of the State which are inconsistent therewith." *Ex parte Siebold*, 100 U.S. 371, 392 [] (1880). Per the Supremacy Clause, "[a]s long as it is acting within the powers granted it under the Constitution," as it did with the NVRA, "Congress may impose its will on the States." *Wyeth v. Levine*, 555 U.S. 555, 584, 129 S. Ct. 1187, 1205 [] (2009). Thus, once Congress enacted the NVRA pursuant to its authority under the Elections Clause, the Eleventh Amendment could no longer immunize a state from any liability. . . Consequently, as the Fifth Circuit itself announced, the Eleventh Amendment has "no relevance to . . . claims seeking to vindicate federal rights and thereby the supremacy of federal law" pursuant to the NVRA. *Young v. Hosemann*, 598 F.3d 184, 189 (5th Cir. 2010) . . .

*Louisiana*, 196 F. Supp. 3d 612 at 657-58 (citations omitted).

---

[2] In fact, Judicial Watch is currently challenging the State's peculiar reading of *Seminole Tribe* (among other things) in an NVRA lawsuit in the Western District of North Carolina. *See Judicial Watch, Inc. v. State of North Carolina et al.*, 3:20-cv-00211-RJC-DCK, ECF 51 at 27-33. As of the date of this filing, no order has been issued in that case.

While the rulings on abrogation under the NVRA are inconsistent, federal courts have routinely found that other federal election laws abrogate state immunity. Recently, the Eleventh Circuit rejected Alabama's effort to declare itself immune from liability under the Voting Rights Act of 1965, as amended. *NAACP v. Alabama*, 949 F.3d 647, 652-53 (11th Cir. 2020) (collecting cases).[3] Compared to the Voting Rights Act, the NVRA's firm textual mandates, including registration and list maintenance requirements, together with the procedures for bringing private enforcement actions offer a *clearer* statement of Congress' intent to abrogate than the Voting Rights Act's text.[4] "It is implausible that Congress designed a statute that primarily prohibits certain state conduct, made that statute enforceable by private parties, but did not intend for private parties to be able to sue States." *Id.* at 652.

## II. The NVRA Was Enacted Pursuant to A Valid Grant of Constitutional Authority.

Congress enacted the NVRA pursuant to its powers under *both* the Elections Clause and Equal Protection Clause of the 14th Amendment. *See* S. Rep. 103-6 at 3; and H.R. Rep. 103-9 at 3 and *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 14-15 (2013) (rejecting presumption against pre-emption under the Supremacy Clause where federal statute is enacted pursuant to Congress' Elections Clause powers). Plaintiffs submit both provisions provide sufficient grounds to limit sovereign immunity here, but for different reasons.

It is settled law that Section 5 of the Fourteenth Amendment provides Congress authority to abrogate sovereign immunity. *Fitzpatrick v. Bitzer*, 427 U. S. 445, 456 (1976). Because it enacted the NVRA pursuant to its Fourteenth Amendment powers, Congress was duly authorized

---

[3] This ruling was later vacated by the Supreme Court as moot after the district court ruled in favor of the state defendants before Alabama could complete its appeal to the interlocutory ruling by the Eleventh Circuit. *Alabama v. Ala. State Conf. of NAACP*, 2021 U.S. LEXIS 2495 (May 17, 2021).

[4] Unlike the Voting Rights Act, the NVRA only applies to federal elections.

to abrogate immunity when it passed the NVRA. *See* S. Rep. 103-6 at 3; and H.R. Rep. 103-9 at 3. Plaintiffs respectfully submit that the abrogation of sovereign immunity inquiry can end here. However, the Court's June 1 order indicated it may desire more clarity on the parties' positions regarding whether Congress is authorized to abrogate when it acts pursuant to its Elections Clause powers.

### III. Pursuant to the "Plan of the Convention Doctrine," States Waived Sovereign Immunity for Federal Elections Under the Elections Clause.

Just this week in *PennEast Pipeline Co., LLC v. New Jersey*, No. 19-1039, 2021 U.S. LEXIS 3564 (June 29, 2021) the Supreme Court addressed the issue of suits against nonconsenting states under Article I. There, the Court reaffirmed that sovereign immunity restricts judicial power under Article III and that Article I does not generally grant Congress authority abrogate. *Id.* at *30 (citing *Seminole Tribe*, 517 U. S. 72-73). However, the Court noted that "congressional abrogation is not the only means of subjecting States to suit [under Article I]." 2021 U.S. LEXIS 3564 at *30 (bracketed language added). The general rule regarding Article I is limited by the "plan of the Convention" doctrine, which recognizes "certain waivers of sovereign immunity to which all states implicitly consented at the founding." *Id.* at *29 (citation omitted). "States can also be sued if they have consented to suit in the plan of the Convention." *Id.* at *30. "[W]here the States agreed in the plan of the Convention not to assert any sovereign immunity defense, no congressional abrogation [is] needed." *Id.* at *30-31 (citations and quotations omitted).

"There is also the postulate that States of the Union, still possessing attributes of sovereignty, shall be immune from suits, without their consent, save where there has been 'a surrender of this immunity in the plan of the convention.'" *Principality of Monaco v. Mississippi*, 292 U.S. 313, 322-23 (1934) (quoting The Federalist No. 81). The "plan of the Convention" refers to "the structure of the original Constitution itself." *PennEast*, 2021 U.S. LEXIS 3564 at *29

(quotations and citation omitted). In *PennEast*, the Supreme Court applied the plan of the Convention doctrine as an exception to sovereign immunity in an eminent domain suit brought by a private party against a state under federal law. *Id.* The Court noted "when the States entered the federal system, they renounced their right to the 'highest dominion in the lands comprised within their limits.'" *Id.* at *31 (citation omitted). "The plan of the Convention contemplated that States' eminent domain power would yield to that of the Federal Government, so far as is necessary to the enjoyment of the powers conferred upon it by the Constitution." *Id.* 31 (citation and quotation marks omitted).

The Supreme Court previously applied the "plan of the Convention" doctrine to Article I in the Tenth Amendment context. *See U.S. Term Limits*, 514 U.S. at 801-06. In *Term Limits*, the Court discussed state authority under Article I's Qualifications and Elections Clause after Arkansas sought to impose new term limit restrictions on congressional and senatorial candidates. The Court explained that as part of the plan of the Convention the Tenth Amendment drew a "basic distinction between the powers of the newly created Federal Government and the powers retained by the pre-existing sovereign States." *Id*. at 801. "[S]tates can exercise no powers whatsoever, which exclusively spring out of the existence of the national government." *Id.* at 802 (citations and quotations omitted). Thus, "in certain limited contexts, the power to regulate the incidents of the federal system is not a reserved power of the States, but rather is delegated by the Constitution." *Id*. at 805. "In short, as the Framers recognized, electing representatives to the National Legislature was a new right, arising from the Constitution itself." *Id*.

Plaintiffs submit that under the plan of the Convention doctrine, the states did not have any original sovereign authority to elect federal representatives prior to constitutional convention and, thus, agreed in adopting the Constitution and the Elections Clause to grant the federal government

the authority over federal elections. Because states consented to the plan of Convention, which grants the federal government authority over federal elections, no abrogation is needed under the NVRA.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss should be denied with respect to the sovereign immunity claims of the State and State Board.

                                        Respectfully submitted,

                                        ILLINOIS CONSERVATIVE UNION,
                                        CAROL J. DAVIS, JANET L. SHAW, and
                                        LORETTA J. SAVEE

| | |
|---|---|
| Dated: July 2, 2021 | By: /s/ Stephen F. Boulton |
| Paul J. Orfanedes (No. 6205255)<br>Robert D. Popper*<br>Eric W. Lee**<br>JUDICIAL WATCH, INC.<br>425 Third Street SW, Suite 800<br>Washington, DC 20024<br>Phone: (202) 646-5172<br>rpopper@judicialwatch.org | Stephen F. Boulton ARDC NO. 6186906<br>Anthony J. Peraica & Associates, Ltd.<br>5130 South Archer Avenue<br>Chicago, Illinois 60632<br>Phone: (773) 735-1700<br>Facsimile: (773) 585-3035<br>support @peraica.com |
| H. Christopher Coates*<br>LAW OFFICE OF H. CHRISTOPHER COATES<br>934 Compass Point<br>Charleston, South Carolina 29412<br>Phone: (843) 609-7080<br>curriecoates@gmail.com | T. Russell Nobile*<br>JUDICIAL WATCH, INC.<br>Post Office Box 6592<br>Gulfport, Mississippi 39506<br>Phone: (202) 527-9866<br>rnobile@judicialwatch.org<br><br>*Application for Admission Pro Hac Vice Forthcoming<br><br>**Admitted Pro Hac Vice |