**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ILLINOIS CONSERVATIVE UNION, CAROL J. DAVIS, JANET L. SHAW, and LORETTA J. SAVEE, | ) ) ) ) | |
| Plaintiffs, | ) ) | 20 CV 5542 |
| v. | ) ) | District Judge Sara L. Ellis |
| | ) ) | Magistrate Judge Beth W. Jantz |
| STATE OF ILLINOIS, THE ILLINOIS STATE BOARD OF ELECTIONS, and BERNADETTE MATTHEWS, in her capacity as the Executive Director of the Illinois State Board of Elections, | ) ) ) ) ) ) ) | Jury Demand |
| Defendants. | ) | |

**DEFENDANTS' SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF
THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendants State of Illinois, Illinois State Board of Elections, and Director Bernadette M. Matthews[1] (hereinafter, "Defendants"), by their attorney, Kwame Raoul, Attorney General of the State of Illinois, file their supplemental brief in support of their motion to dismiss and respectfully request that this Court dismiss Plaintiffs' National Voter Registration Act (hereinafter the "NVRA") claim against the State of Illinois and State Board of Elections pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). In support thereof, Defendants state as follows:

**INTRODUCTION**

On June 1, 2021, the Court partially granted and partially denied Defendants' motion to dismiss. (ECF No. 19). In doing so, the Court reserved ruling on the "the State and the Board's

---

[1] Pursuant to Fed. R. Civ. Pro. 25(d), Acting Executive Director Bernadette M. Matthews is automatically substituted for former Executive Director Steve Sandvoss.

sovereign immunity argument with respect to the NVRA claim" and ordered the parties to file supplemental briefs "addressing the question of whether Congress abrogated sovereign immunity under the NVRA, with citations to relevant legal authority." (*Id*.). For the reasons argued below, and in their motion to dismiss briefings (ECF Nos. 5, 17), Congress did not abrogate sovereign immunity under the NVRA, and therefore, the State of Illinois and the Illinois State Board of Elections should be dismissed from this action.

## ARGUMENT

In ordering the parties to file supplemental briefs addressing whether Congress abrogated sovereign immunity, the Court referenced a two-step analysis. (ECF No. 19 at 17). The first question is "whether Congress has 'unequivocally expresse[d] its intent to abrogate the immunity,'" and the second is "whether Congress has acted 'pursuant to a valid exercise of power.'" (*Id*.). Here, Congress has not unequivocally expressed its intent to abrogate sovereign immunity under the NVRA. And even if Congress had expressed such an intent, any attempt to abrogate sovereign immunity would not be a valid exercise of Congressional power.

> **A.  Congress has not unequivocally expressed its intent to abrogate sovereign immunity under the NVRA.**

Congress has not clearly expressed its intent to abrogate sovereign immunity under the NVRA and so the State cannot be named as a defendant to this action. *Pub. Int. Legal Found., Inc. v. Bell*, No. 5:19-CV-248-BO, 2019 WL 5290920, at *2 (E.D.N.C. Oct 17, 2019) (Congress did not abrogate state immunity for NVRA suits because "the general authorization to bring suit in federal court provided in 52 U.S.C. § 20510(b)(2) 'is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment.'"); *Krieger v. Loudon Cnty.*, No. 5:13 cv 073, 2014 WL 4923904, at *3 (W.D. Va. Sept. 30, 2014) (finding that the NVRA does not "contain the requisite

language abrogating the state's 11th Amendment sovereign immunity"). However, Plaintiffs assert that by "authorizing private civil actions in the NVRA and including mandates with which 'each State shall' comply, Congress provided an unmistakably clear statement of its intent to abrogate." (ECF No. 19 at 17). They cite *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996), for this position, but the Indian Gaming Regulatory Act (hereinafter, the "IGRA") analyzed in that case was explicit in abrogating Eleventh Amendment immunity, while the NVRA is not.

Because of the differences between the IGRA and the NVRA, the *Seminole Tribe* case offers no support for Plaintiffs' position. The IGRA mandated that the "States have a duty to negotiate in good faith with a tribe toward the formation of a compact" regarding a tribe's ability to conduct gaming activities. *Seminole*, 517 U.S. at 47. Unlike the NVRA, the IGRA referred to, and contemplated, the State as the defendant in the "remedial scheme" section of the statute. *Id.* at 57. The Court was persuaded by the IGRA's declaration that it vests jurisdiction in "[t[he United States district courts … over any cause of action … arising from the failure of a State to enter into negotiations … or to conduct such negotiations in good faith." *Id.* (citing § 2710(d)(7)(A)(i)). But any doubt as to whether the State was the defendant contemplated in the statute was "dispelled" upon a review of Section 2710(d)(7). *Id.* As the Court pointed out, Section 2710(d)(7) expressly contemplates "the State" as a party to litigation:

> Section 2710(d)(7)(B)(ii)(II) provides that if a suing tribe meets its burden of proof, then the "burden of proof shall be upon the State ...."; § 2710(d)(7)(B)(iii) states that if the court "finds that the State has failed to negotiate in good faith ..., the court shall order the State ..."; § 2710(d)(7)(B)(iv) provides that "the State shall ... submit to a mediator appointed by the court" and subsection (B)(v) of § 2710(d)(7) states that the mediator "shall submit to the State."

*Id.* Under the IGRA, the State's burden of proof, submission to court orders, and mandatory mediation attendance can only make sense in a litigation context. Accordingly, the Court found it "indubitable" that Congress intended to abrogate sovereign immunity under the IGRA. *Id.*

Plaintiffs assert that the NVRA is similar to the IGRA because it allows "private civil actions" to be brought "'in an appropriate district court'" and mandates that "'each state shall . . .' take particular actions." (ECF No. 12 at 22) (citing 52 U.S.C. § 20510(b)(1), (2) and 20503(a), 20505(a)(1), 20506(a)(1), and 20507(a), respectively). But this argument was already dismissed by the same *Seminole* Court. As clarified by that Court, "[a] general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment." 517 U.S. at 55-56. This is because the "fact that Congress grants jurisdiction to hear a claim does not suffice to show Congress has abrogated all defenses to that claim." *Id.* (citing *Blatchford v. Native Vill. of Noatak,* 501 U.S. 775, 786, n. 4 (1991)). Instead, Congress can abrogate the "States' constitutionally secured immunity from suit in federal court only by making its intention *unmistakably clear* in the language of the statute." *Id.* (citing *Dellmuth v. Muth,* 491 U.S. 223, 227-228 (1989)). Here, Plaintiffs fail to point to any NVRA provision that, without a doubt, identifies the State as a defendant and thereby aligns the NVRA with the IGRA.

Neither, as Plaintiffs' argument implies, does the fact that a federal statute mandates that the states perform certain functions result in the automatic abrogation of Eleventh Amendment immunity. Indeed, this argument was not even considered by the

4

Court. *See id.* Instead, what the *Seminole* Court took into consideration was that the IGRA outlined conditions that applied to the State in a litigation context. *Id.*

Plaintiffs were unable to provide any cases directly supporting their position that the NVRA abrogated sovereign immunity (*see* ECF No. 12 at 22). While this Court references *Stringer v. Hughs*, a Texas district court case that found an abrogation of immunity (ECF No. 19 at 17), *Stringer* is not persuasive. In *Stringer,* the court had not heard from the parties on the question of sovereign immunity because "Defendants ha[d] not invoked sovereign immunity in Stringer II." 2020 WL 6875182, at *19 (W.D. Tex. Aug. 28, 2020). Instead, the court made a finding on that issue *sua sponte* "in the event it is raised again at some juncture." *Id*. In that court's opinion, "Congress's abrogation of immunity under the NVRA is clear and unequivocal," but the court did not cite to a single case that supported that position. (*See id.*). In fact, the court only cited two cases in the sovereign immunity section of its opinion, and those two cases addressed suits against state officials such as Indiana's Secretary of State and Hawaii's Director of Elections, not the states or their agencies. *Id*. (citing *Crawford v. Marion County*, 553 U.S. 181 (2008) ("Equal Protection claim against the Indiana Secretary of State and others challenging state voter ID law") and *Burdick v. Takushi*, 504 U.S. 428 (1992) ("voter's Equal Protection claim against Hawaii Director of Elections and others challenging state write-in voting prohibition")). The court relied on cases that did not support its position and provided only a short, undeveloped discussion of the issue. It cannot reasonably be argued that the district court's paragraph on sovereign immunity is a more well-reasoned analysis than the Supreme Court's lengthy analysis in *Seminole*, which is binding precedent.

Further, the Court is not obligated to follow this outlier district court case. The "decisions of district courts are not authoritative even within the rendering district" and "cannot 'settle' any proposition." *Van Straaten v. Shell Oil Prods. Co. L.L.C.*, 678 F.3d 486, 490-91 (7th Cir. 2012). Instead, the Court should follow the cases finding that the NVRA did not abrogate sovereign immunity, such as *Public Interest Legal Fund* and *Krieger*, because they are in line with *Seminole*'s binding authority.

Plaintiffs' assertion that the NVRA unmistakably abrogated sovereign immunity is incorrect, and therefore the State of Illinois and State Board of Elections should be dismissed.

**B.  Any intent to abrogate sovereign immunity under the NVRA would be an invalid exercise of Congressional power.**

Even if it could be argued that Congress made its intent to abrogate the Eleventh Amendment unmistakably clear in the NVRA, Plaintiffs still must clear a second hurdle. Plaintiffs must show that the unquestionable intent to abrogate was made pursuant to a valid exercise of Congressional power. *Seminole*, 517 U.S. at 55.

Plaintiffs cannot make such a showing. Plaintiffs cite to *Seminole* in support of their position that because the NVRA was enacted under the Fourteenth Amendment, it gave Congress the authority to abrogate sovereign immunity. (ECF No. 12 at 22). Plaintiffs argue that since the NVRA was enacted under the Elections Clause, which gives Congress absolute authority over elections, the election-related responsibilities of the states were delegated to them by Congress. (*Id.*). As a result of this delegation of authority, Plaintiffs argue, state sovereignty interests are "less acute" in these contexts. (*Id.*).

But the *Seminole* Court considered and rejected both of these arguments. Similar to Plaintiffs here, the petitioner in *Seminole* argued that "the abrogation power is validly exercised

6

here because the Act grants the States a power that they would not otherwise have, viz., some measure of authority over gaming on Indian lands." 517 U.S. at 58. The Court did "not see how that consideration is relevant to the question," because "Eleventh Amendment immunity may not be lifted by Congress unilaterally deciding that it will be replaced by grant of some other authority." *Id.* at 58-59 (citation omitted).

In order to preserve sovereign immunity, the Supreme Court even went as far as to overturn their previous holding in *Pennsylvania v. Union Gas*. *Id*. at 66 (citing 491 U.S. 1 (1989)). *Union Gas* had previously found that "the Interstate Commerce Clause, Art. I, § 8, cl. 3, granted Congress the power to abrogate state sovereign immunity, stating that the power to regulate interstate commerce would be 'incomplete without the authority to render States liable in damages.'" *Id.* at 59 (citing 491 U.S. at 19–20). Similar to Plaintiffs' argument here, *Union Gas* "found the power to abrogate from the 'plenary' character of the grant of authority over interstate commerce." *Id.* at 60. However, upon further reflection, the Court determined that this "rationale depart[ed] from our established understanding of the Eleventh Amendment and undermine[d] the accepted function of Article III." *Id*. at 66. The Court felt "bound to conclude that *Union Gas* was wrongly decided" and declared the case "overruled." *Id.* at 66. Likewise, Plaintiffs' argument that the NVRA abrogates sovereign immunity because it was enacted under the Elections Clause is unpersuasive.

As for Plaintiffs' argument that all acts passed under the Fourteenth Amendment abrogate sovereign immunity, the Court also disagreed. *Id*. at 65-66 (finding that the "plurality's extended reliance upon our decision in *Fitzpatrick v. Bitzer,* 427 U.S. 445, (1976), that Congress could under the Fourteenth Amendment abrogate the States' sovereign immunity was also, we believe, misplaced"). The argument was "that the Fourteenth Amendment, adopted well after the

7

adoption of the Eleventh Amendment and the ratification of the Constitution, operated to alter the pre-existing balance between state and federal power achieved by Article III and the Eleventh Amendment." *Seminole* concluded that the "Eleventh Amendment prohibits Congress from making the State [] capable of being sued in federal court." *Id.* at 75.

While it is true that statutes enacted pursuant to Section 5 of the Fourteenth Amendment can abrogate sovereign immunity, as pointed out in *Seminole*'s analysis of *Fitzpatrick*, those instances are limited. *Id*. at 65-66 (citing *Fitzpatrick v. Bitzer,* 427 U.S. 445 (1976)). The narrow abrogation issue considered in *Fitzpatrick* was whether the Eleventh Amendment barred the State from having to pay the attorneys' fees and back pay in connection to the court granting injunctive relief against state officials in a private civil action under Title VII of the Civil Rights Act. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 447, 449 (1976). The Court found that because the underlying statute *expressly* allowed for private rights of action against state officials, it followed that the Eleventh Amendment did not bar the State from having to pay the underlying attorneys' fees and related back pay. *Id.* at 457 (emphasis added). The question of whether the State is an appropriate party under the NVRA was not analyzed in the *Fitzpatrick* case. The fact that the Fourteenth Amendment might abrogate sovereign immunity for indemnification purposes does not support the contention that the State can be named as a party under the NVRA.

The non-binding, subsidiary Sixth Circuit *Harkless* case that Plaintiffs cite does not support the conclusion that the State is an appropriate party under the NVRA either. (ECF No. 12 at 22). While that case does support the contention that "Congress has plenary authority over federal elections," whether the State itself could be sued under the NVRA was not an issue in that case and so it is not instructive on the abrogation question. *Harkless v. Brunner*, 545 F.3d 445, 449 (6th Cir. 2008). The *U.S. Term Limits v. Thornton* case that Plaintiffs reference did not

discuss the abrogation of a State's sovereign immunity either. (ECF No. 12 at 22 (citing 514 U.S. 779, 800-05 (1985))).

Lastly, the Court references a vacated Louisiana district court opinion generally stating that "once Congress enacted the NVRA pursuant to its authority under the Elections Clause, the Eleventh Amendment could no longer immunize a state from any liability." (ECF No. 19 at 19) (citing *United States v. Louisiana*, 196 F. Supp. 3d 612, 657 (M.D. La. 2016)). The opinion does generally depart from the *Seminole* analysis. *Id*. But unlike *Seminole*'s holding, the holding in *Louisiana* is non-binding. The facts are also distinguishable because the United States was bringing the action in that case and the Eleventh Amendment "does not bar suits brought by the United States itself." *Id.* (citations omitted). The question of whether a state can be named as a defendant in an action brought by a party other than the United States was not analyzed and so the generalized holding is at most, dicta. But even if the opinion were to be given more weight, it can no longer be relied upon because the court later decided to void the finding by vacating this opinion and therefore, it effectually does not exist. *United States v. Louisiana*, No. 3:11-CV-470-JWD-RLB, 2017 WL 4118968, at *1 (M.D. La. 2017).

For the above-mentioned reasons, abrogating sovereign immunity under the NVRA would be an invalid exercise of Congressional power and so the State of Illinois and State Board of Elections should be dismissed.

## CONCLUSION

**WHEREFORE**, for the reasons stated herein, Defendants respectfully request that this Court grant their motion to dismiss Plaintiffs' NVRA claim against the State of Illinois and the Illinois State Board of Elections pursuant to Rules 12(b)(6) and 12(b)(1) with prejudice.

Respectfully submitted,

KWAME RAOUL
Illinois Attorney General

By: */s/ Kelly C. Bauer*
KELLY C. BAUER
ASSISTANT ATTORNEY GENERAL
Office of the Illinois Attorney General
General Law Bureau – Civil Rights Unit
100 W. Randolph St., 13th Floor
Chicago, IL 60601
Kelly.bauer@illinois.gov

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 2, 2021, I submitted with the Clerk for the Northern District of Illinois using the Court's electronic filing system, or CM/ECF, **DEFENDANTS' SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT** and thereby provided a copy of to all parties of record.

By: <u>*/s/ Kelly C. Bauer*</u>
KELLY C. BAUER
ASSISTANT ATTORNEY GENERAL