IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ILLINOIS CONSERVATIVE UNION, CAROL J. DAVIS, JANET L. SHAW, and LORETTA J. SAVEE, | ) ) ) ) | |
| Plaintiffs, | ) ) | 20 CV 5542 |
| v. | ) ) | District Judge Sara L. Ellis |
| | ) ) | Magistrate Judge Beth W. Jantz |
| STATE OF ILLINOIS, THE ILLINOIS STATE BOARD OF ELECTIONS, and BERNADETTE MATTHEWS, in her capacity as the Executive Director of the Illinois State Board of Elections, | ) ) ) ) ) ) | Jury Demand |
| Defendants. | ) ) ) | |

## DEFENDANTS' SECOND SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendants State of Illinois, Illinois State Board of Elections, and Acting Executive Director Bernadette M. Matthews[1] (hereinafter, "Defendants"), by their attorney, Kwame Raoul, Attorney General of the State of Illinois, file their second supplemental brief in support of their motion to dismiss and respectfully request that this Court dismiss Plaintiffs' National Voter Registration Act (hereinafter the "NVRA") claim against the State of Illinois and State Board of Elections pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). In support thereof, Defendants state as follows:

### INTRODUCTION

On June 1, 2021, the Court partially granted and partially denied Defendants' motion to dismiss. (ECF No. 19). The Court ordered the parties to submit supplemental filings and most

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Acting Executive Director Bernadette M. Matthews is automatically substituted for former Executive Director Steve Sandvoss.

1

recently, ordered Defendants to submit a second supplemental filing. (ECF Nos. 19 & 27). For the reasons argued below, and in their motion to dismiss briefings (ECF Nos. 5, 17, 25), the State did not waive its sovereign immunity in Election Clause cases pursuant to the plan of the Convention doctrine, and therefore, the State of Illinois and the Illinois State Board of Elections should be dismissed from this action.

ARGUMENT

Contrary to Plaintiffs' argument, the State has not waived sovereign immunity to Election Clause cases pursuant to the plan of the Convention, nor do the cases cited by Plaintiffs hold otherwise.

### A. The cases cited by Plaintiffs do not hold that states waived their sovereign immunity in Election Clause cases under the plan of the Convention.

Plaintiffs cite to *PennEast Pipeline Co., L.L.C. v. New Jersey* for the position that the States can be sued if they agreed to waive sovereign immunity in the plan of the Convention. (ECF No. 23 at 9 citing 141 S. Ct. 2244 (2021)). In such instances, congressional abrogation is not required. (*Id.*). As quoted by Plaintiffs, "[t]he plan of the Convention contemplated that States' eminent domain power would yield to that of the Federal Government, so far as is necessary to the enjoyment of the powers conferred upon it by the Constitution." (*Id.* at 10). But Plaintiffs are not the Federal Government, nor has the Federal Government delegated any authority to them.

In *PennEast Pipeline Co., L.L.C.*, the Court analyzed a very different situation, involving a different historical statutory framework, from the one at hand. In 1938, Congress passed the Natural Gas Act, which delegated authority to the Federal Power Commission, now the Federal Energy Regulatory Commission, to approve the construction and extension of national pipelines through its administration of the Act. 141 S. Ct. 2244, 2252 (2021)). The Commission did this by

2

providing approved gas companies with certificates. But, pipeline builders were not simultaneously provided "secure property rights necessary to build pipelines" and so their only recourse was state eminent domain procedures that were often not a realistic option. *Id.* In order to resolve this barrier to pipeline expansion, Congress amended the Natural Gas Act to explicitly and without question "authorize certificate holders to exercise the *federal* eminent domain power." *Id.*

In that case, the plaintiff was a certified pipeline that sought to exercise its federal eminent domain power over New Jersey's property and obtain "rights-of-way" to the approved pipeline route. *Id.* at 2253. The State moved to dismiss the action on sovereign immunity grounds. *Id.* In making its ruling, the Court noted that "[s]ince the founding, the Federal Government has exercised its eminent domain authority through both its own officers and private delegates . . . to take property interests held by both individuals and the States." *Id.* at 2254. As early as 1876, the Court had held that federal eminent domain power "can neither be enlarged nor diminished by a State" and that the "[t]he consent of a State can never be a condition precedent to [its] enjoyment." *Id.* citing *Kohl* v. *United States*, 91 U. S. 367, 374 (1876). In 1941, the Court explicitly found that this applies to state property as well. *Id.* citing *Oklahoma ex rel. Phillips* v. *Guy F. Atkinson Co.*, 313 U. S. 508 (1941). Further, the Court explained that the plan of the Convention recognizes limited waivers of sovereign immunity in the limited context of "bankruptcy proceedings, suits by other States, and suits by the Federal Government." *Id.* at 2258 (citations omitted). For these reasons, the plaintiff was entitled to exercise its delegated eminent domain authority over New Jersey's lands. *Id.* at 2263.

Plaintiffs also cite to *United States Term Limits v. Thornton* in arguing that the Court "applied the 'plan of the Convention' doctrine to Article I in the Tenth Amendment context."

3

(ECF No. 23 at 10). In that case, the Court analyzed a challenge to an Arkansas statute that limited the terms of elected officials. *U.S. Term Limits v. Thornton*, 514 U.S. 779, 783-84 (1995). The issue in that case was "whether the Constitution forbids States to add to or alter the qualifications specifically enumerated in the Constitution." *Id.* at 787. The Court noted that "during the first 100 years of its existence, Congress strictly limited its power to judge the qualifications of its members to those enumerated in the Constitution." *Id.* at 792 citing *Powell v. McCormack*, 395 U.S. 486, 542 (1969). Further, "history shows that, with respect to Congress, the Framers intended the Constitution to establish fixed qualifications" that "may not be supplemented by Congress." *Id*. at 792-93, 798. The Court cited a plethora of cases finding "that States lack the authority to add qualifications" in instances such as term limits, district residency requirements, loyalty oath requirements, and restrictions on convicted felons. *Id.* at 798-99 (citations omitted). This is because "electing representatives to the National Legislature was a new right, arising from the Constitution itself" and so the Tenth Amendment cannot provide the States with the power to "add qualifications to those that are fixed in the constitution." *Id.* at 805.

As for the Elections Clause, the Court explained that "[t]he Framers intended the Elections Clause to grant States authority to create procedural regulations, not to provide States with license to exclude classes of candidates from federal office." *Id.* at 832-33. The Court added that that "States are thus entitled to adopt 'generally applicable and evenhanded restrictions that protect the integrity and reliability of the electoral process itself.'" *Id*. at 833 citing *Anderson* v. *Celebrezze*, 460 U.S. 780, 788, n. 9 (1983). But because the Arkansas statute directly modified term limits already set out in the Constitution, it could not stand. *Id.* at 837.

The case at hand is easily distinguishable from the cases cited by Plaintiffs. Plaintiffs are not the Federal Government, nor have they been delegated its authority. Plaintiffs do not cite to

any cases holding that a state's sovereign immunity is automatically waived when private citizens file suit against it on an Elections Clause theory. Nor do Plaintiffs explain how the well-established history of the Federal Government delegating its eminent domain authority is directly applicable to the Elections Clause. The Supreme Court's decision in *U.S. Term Limits* explains that the Elections Clause grants the States authority to make decisions regarding the election, so long as those decisions do not directly oppose the Constitution. Unlike the statute analyzed in *U.S. Term Limits*, the Illinois statute at issue in this case does not divert from the Constitution. Plaintiffs' broad-sweeping argument that the States waived sovereign immunity as to any and all claims from private citizens under the Elections Clause lacks support. Illinois' sovereign immunity remains intact.

For the above-mentioned reasons, the State has not waived sovereign immunity in Elections Clause cases pursuant to the plan of the Convention doctrine and so the State of Illinois and State Board of Elections must be dismissed.

### CONCLUSION

**WHEREFORE**, for the reasons stated herein, Defendants respectfully request that this Court grant their motion to dismiss Plaintiffs' NVRA claim against the State of Illinois and the Illinois State Board of Elections pursuant to Rules 12(b)(6) and 12(b)(1) with prejudice.

Respectfully submitted,

KWAME RAOUL
Illinois Attorney General

By:     */s/ Kelly C. Bauer*
KELLY C. BAUER
ASSISTANT ATTORNEY GENERAL
Office of the Illinois Attorney General
General Law Bureau – Civil Rights Unit

100 W. Randolph St., 13th Floor
Chicago, IL 60601
Kelly.bauer@ilag.gov